IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

REBECCA J. PAYNE, personally,
and as the Personal Representative of the
ESTATE OF NOAH HUNTER BRITTAIN;
JORDAN L. KING; and JAMES L. CROWDER;                    PLAINTIFFS

v.                          Case No. 4:22-cv-00588 KGB

MICHAEL C. DAVIS;
NATHAN RICE; JOHN W. STALEY; and
LONOKE CO. SHERIFF JOHN W. STALEY;                      DEFENDANTS


**FIRST AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**


**AND NOW** come the Plaintiffs, REBECCA J. PAYNE, personally, and as the Personal

Representative of the ESTATE OF NOAH HUNTER BRITTAIN; JORDAN L. KING; and

JAMES L. CROWDER; by and through their counsel, DEVON M. JACOB, ESQUIRE, of the law

firm of JACOB LITIGATION, INC.; and BENJAMIN L. CRUMP, ESQUIRE, of BEN CRUMP

LAW, PLLC, to aver as follows:


I.      **JURISDICTION AND VENUE**

1.      This action is brought pursuant to 42 U.S.C. § 1983.

2.      Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

3.      Venue is proper in this Court, as all parties are located within the Eastern District

of Arkansas, and the cause of action arose in the Eastern District of Arkansas.

1

## II.   **IDENTIFICATION OF DECEDENT and PARTIES**

4.     The Decedent is NOAH HUNTER BRITTAIN ("BRITTAIN") who was shot and killed on June 23, 2021, at the age of 17. On the date of his death, BRITTAIN was a resident of White County, Arkansas. BRITTAIN was very much loved by his friends and family.





5.     Plaintiff, REBECCA J. PAYNE ("PAYNE") is an adult female who during all relevant times, was a resident of White County, Arkansas. PAYNE is the grandmother of the decedent. The Circuit Court of White County, Arkansas Probate – Third Division, appointed PAYNE the Personal Representative of the ESTATE OF NOAH HUNTER BRITTAIN (ESTATE").

6.      Plaintiff, JORDAN L. KING ("KING"), is an adult male who during all relevant times was a resident of White County, Arkansas.

7.      Plaintiff, JAMES L. CROWDER ("CROWDER"), is an adult male, who during all relevant times was a resident of White County.

8.      Defendant, MICHAEL C. DAVIS ("DAVIS"), is an adult male who during all relevant times was employed by the Lonoke County Sheriff's Office, as a Deputy Sheriff. All of DAVIS' actions or inactions were taken under the color of state law. He is sued in his individual capacity.

9.      Defendant, NATHAN RICE ("RICE"), is an adult male who during all relevant times was employed by the Lonoke County Sheriff's Office, as a Deputy Sheriff. All of RICE'S actions or inactions were taken under the color of state law. He is sued in his individual capacity.

10.     Defendant, JOHN W. STALEY ("STALEY/SHERIFF"), is an adult male who during all relevant times was employed by the Lonoke County Sheriff's Office, as the Sheriff. All of STALEY/SHERIF'S actions or inactions were taken under the color of state law. He is sued in his individual *and* official capacities.

### III.   <u>MATERIAL FACTS</u>

11.     On June 22, 2021, NOAH HUNTER BRITTAIN ("BRITTAIN"), JORDAN L. KING ("KING"), and JAMES L. CROWDER ("CROWDER"), longtime friends, were at Mahoney's Body Shop, 7180 State Highway 89 South, Cabot, Arkansas 72023, attempting to repair BRITTAIN'S white GMC Sierra pickup truck.

12.     Mahoney's Body Shop is owned and operated by CROWDER'S maternal grandfather.

13.     The boys had a talent for repairing vehicles, and on this night, were attempting to replace the transmission in BRITTAIN'S truck.

14.     They were working late at night because they were trying to get the repair completed in time for BRITTAIN to be able to drive the truck to work the next morning.



15.     The boys worked on the truck all night and into the early hours of June 23, 2021.

16.     Just before 3:00 AM, believing they had completed the repair, they decided to take the truck for a test-drive.

17.     BRITTAIN got in the driver's seat, and KING got in the passenger seat.

18.     On their drive, the boys quickly discovered that the transmission was not adjusted correctly, so they turned around and headed back to Mahoney's.

19.     KING observed that a sheriff's vehicle had begun to follow them.

20.     That sheriff's vehicle was a Dodge Ram 1500 that was being operated by Lonoke County Deputy Sheriff Sergeant MICHAEL C. DAVIS (DAVIS").

21.     As the boys were approaching Mahoney's, BRITTAIN'S truck began to smoke.

22.     KING recalls BRITTAIN and him laughing about the smoke.

4

23.     When BRITTAIN turned his left blinker on to turn into Mahoney's, DAVIS activated the blue lights (emergency lighting) on his patrol vehicle.

24.     The boys turned into the driveway to Mahoney's, and DAVIS followed closely behind.

25.     The boys stopped the truck in a well-lit area.

26.     There is a streetlight located on a pole in the vicinity, and the headlights from DAVIS' patrol vehicle provided additional lighting.



27.     BRITTAIN brought his truck to a stop, intending to comply with whatever DAVIS needed.

28.     BRITTAIN, however, was unable to shift the truck's transmission into park.

29.     The boys opened their doors to let the smoke out.

30.     Because DAVIS had inexplicably pulled so close to BRITTAIN'S vehicle, BRITTAIN feared that if his truck began to roll, it would roll into DAVIS' vehicle.

31.     So, BRITTAIN decided that he would block the rear wheel of his truck to prevent it from rolling.

32.     BRITTAIN got out of his truck and walked to the bed of his truck to retrieve an anti-freeze container to block the wheel.

33.     Without warning, DAVIS exited his vehicle and fired a bullet from his duty weapon into the lower right side of BRITTAIN'S neck.

34.     KING recalls that the moment he (KING) stuck his leg out the door of BRITTAIN'S truck, he heard a single loud gunshot.

35.     Startled and still in the passenger seat, KING quickly turned to his left, and through BRITTAIN'S open driver's door, saw BRITTAIN just as he was landing on the ground next to the truck.

36.     DAVIS admits that just prior to discharging his firearm, he could not see BRITTAIN'S hands or if anything was in his hands.

37.     BRITTAIN fell to the ground and a large bright blue plastic bottle of antifreeze landed next to him.



38.     Unbeknownst to DAVIS, CROWDER was in the vicinity on the Mahoney property when DAVIS shot BRITTAIN.

39.     CROWDER had heard BRITTAIN'S truck returning, so he exited the shop.

40.     CROWDER saw flashing blue lights, so he walked toward the blue lights to see what was happening and to make sure that everyone was okay.

41.     Shortly after BRITTAIN'S truck came to a stop, CROWDER heard a gunshot.

42.     Upon hearing the gunshot, CROWDER froze but continued to watch the events unfold.

43.     CROWDER watched DAVIS walk towards BRITTAIN'S truck while yelling "shots fired, shots fired" into the mic of his police radio.

44.     KING and CROWDER confirm that DAVIS never said anything prior to shooting BRITTAIN.

45.     Specifically, DAVIS never issued any verbal commands or warnings to BRITTAIN prior to shooting him.

46.     Before being shot by DAVIS, BRITTAIN never issued any threats, made any threatening gestures, or presented as a threat.

47.     The last thing that BRITTAIN experienced was fear, physical pain, and a struggle to breathe, while laying alone in the gravel and dirt next to his truck.

48.     CROWDER observed RICE arrive, place KING at gunpoint, and then order KING to get out of the truck.

49.     RICE then ordered KING to lift his shirt, turn around, and back up towards the sound of his voice.

50.     RICE then handcuffed KING to the rear and locked him in the rear of a sheriff's vehicle.

7

51.     KING remained in handcuffs, locked in the rear of a patrol vehicle, for approximately three hours, despite RICE learning almost immediately after taking him into custody that he no longer had a lawful basis to keep KING in custody.

52.     An Arkansas State Trooper, and not RICE, freed KING from custody.

53.     CROWDER moved to another location on the property and from that location, observed BRITTAIN laying on the ground next to his truck.

54.     BRITTAIN was transported to Baptist Health Medical Center in North Little Rock by the Metropolitan Emergency Medical Service, where he was pronounced dead.

55.     An autopsy was performed on BRITTAIN.

56.     BRITTAIN'S cause of death was determined to be "gunshot wound of neck and arm," and the manner of death was determined to be homicide.

57.     Once in custody, CROWDER heard DAVIS yell at KING, "well why the hell was he reaching for that oil jug?!"[1]

58.     On June 21, 2013, STALEY/SHERIFF appointed DAVIS as a Deputy Sheriff in Lonoke County, Arkansas.

59.     On July 15, 2014, the Arkansas Commission on Law Enforcement Standards and Training certified DAVIS as a law enforcement officer (Basic).

60.     On May 9, 2016, the Arkansas Commission on Law Enforcement Standards and Training certified DAVIS as a Police Professional Instructor.

---

[1] DAVIS would later claim that he thought BRITTAIN'S truck was a stolen vehicle. However, a stolen vehicle is not inherently a violent crime. The Federal Bureau of Investigation ("FBI") Uniform Crime Reports ("UCR") defines "violent crimes" as "offenses that involve force or threat of force." https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/violent-crime In contrast, the UCR identifies "motor truck theft" as a "property crime," and explains that "object of the theft-type offenses is the taking of money or property, but there is no force or threat of force against the victims." https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/property-crime

61.     On June 21, 2017, the Arkansas Commission on Law Enforcement Standards and Training certified DAVIS as a Field Training Officer.

62.     On February 7, 2020, STALEY/SHERIFF promoted DAVIS to the rank of Sergeant.

63.     During all relevant times, DAVIS was acting pursuant to the policies and procedures of STALEY/SHERIFF.

64.     Through DAVIS' training, certifications, and STALEY/SHERIFF'S policies, DAVIS knew that any force used must be objectively reasonable.

65.     Through DAVIS' training, certifications, and STALEY/SHERIFF'S policies, DAVIS knew that before using force, he was required to verify a credible threat (not assume one).

66.     Through DAVIS' training, certifications, and STALEY/SHERIFF'S policies, DAVIS knew that before using deadly force, he was required, when feasible, to identify himself and issue a warning.

67.     Through DAVIS' training, certifications, and STALEY/SHERIFF'S policies, DAVIS knew that he was required to activate his body worn camera when contacting the public.

68.     STALEY/SHERIFF'S policy provides, *"Every applicant for employment by the department must be examined for emotional stability and physical condition by an individual licensed and qualified to perform the examinations. The examiners shall make recommendation to the employing agency concerning the applicant's suitability for employment."*

69.     The stated purpose for the aforementioned policy: *"It is in keeping with the concept that in order to render proper service to the community, a law enforcement officer must be physically sound and free of any defect, which might adversely affect the performance of duty. The deputy's personal safety and the safety and lives of others will be endangered if these important*

9

*physical qualifications are not met. Furthermore, the emotional stability to withstand the pressures of modern law enforcement work is an essential qualification for applicants for law enforcement service and although psychological test and interviews have recognized limitations, many personality defects can and are identified through screening by trained professionals."*

70.     The aforementioned policy further provides: *"After employment, the department reserves the right to have any employee reexamined at any time to determine his/her fitness for duty."*

71.     The aforementioned policy further provides: *"If a mental health examiner indicates the presence of a condition that could limit the deputy's mental ability to cope with the stress of law enforcement duties, he/she will not be eligible for certification as a law enforcement officer with this department."*

72.     Pursuant to FED.R.CIV.P. 11(b)(3), the following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery:

        a.      STALEY/SHERIFF knew that DAVIS suffered from a mental illness.

        b.      STALEY/SHERIFF knew that pursuant to policy and state law, he was required to ensure that DAVIS was psychologically fit for duty.

        c.      STALEY/SHERIFF knew that DAVIS was considered overly eager during his field training.

        d.      STALEY/SHERIFF knew that DAVIS suffered from mental illness during his employment.

        e.      STALEY/SHERIFF knew that DAVIS was required to take prescribed medications for his mental illness.

f.      STALEY/SHERIFF knew that if DAVIS failed to take his medication as prescribed, he would not be emotionally stable and would be a danger to the public.

g.      STALEY/SHERIFF did not supervise DAVIS to ensure that he took his prescribed medication as required.

h.      STALEY/SHERIFF'S failure to supervise DAVIS' known mental health issue permitted DAVIS to patrol for approximately two weeks, including the date that DAVIS shot and killed BRITTAIN.

i.      DAVIS' failure to take his medication as prescribed directly caused his emotional instability that caused him to unlawfully shoot and kill BRITTAIN.

j.      STALEY/SHERIFF knew that his own failure to supervise DAVIS is what caused BRITTAIN'S injuries and death.

k.      To cover up his own culpability, STALEY/SHERIFF terminated DAVIS' employment without conducting a proper and complete internal affairs investigation.

l.      To cover up his own culpability, STALEY/SHERIFF did not terminate DAVIS' employment because he unlawfully shot and killed BRITTAIN.

m.      Instead, STALEY/SHERIFF terminated DAVIS' employment because DAVIS failed to turn on his body camera.

n.      Stated another way, STALEY/SHERIFF terminated DAVIS' employment because DAVIS failed to record the unlawful killing; not for engaging in the killing.

## IV.    LEGAL CLAIMS[2]

### COUNT I

**Plaintiff PAYNE v. Defendant DAVIS**
**Fourth Amendment (False Arrest)**
**Pursuant to 42 U.S.C. § 1983**

73.     Paragraphs 1-72 are incorporated herein by reference.

74.     42 U.S.C. § 1983 authorizes lawsuits against law enforcement officers who violate constitutional rights while acting under color of state law.

75.     The Fourth Amendment, applicable to the states through the Fourteenth Amendment, prohibits unreasonable seizures, including arrests lacking probable cause. See Bailey v. United States, 568 U.S. 186 (2013).

76.     To prevail on his false arrest claim, a Plaintiff "must show that there was no probable cause to support the seizure.

77.     DAVIS seized BRITTAIN by shooting a bullet into him.

78.     DAVIS did not have the requisite probable cause to seize BRITTAIN.

79.     As a direct and proximate result of the Defendant's conduct, Plaintiff's Decedent suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

80.     As a direct and proximate result of the Defendant's conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

---

[2] In a Complaint, a Plaintiff is only required to plead facts, not legal theories. See Johnson v. City of Shelby, 574 U.S. 10 (2014) (Per Curiam) (reversing Fifth Circuit and holding that only facts need be pled in a complaint, not legal theories). Plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U. S. 544, 569-70 (2007); Ashcroft v. Iqbal, 556 U. S. 662 (2009). Plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P 8(a)(2). "Each allegation must be simple, concise, and direct. No technical form is required." FED.R.CIV.P. 8(d)(1).

## COUNT II

**Plaintiff PAYNE v. Defendant DAVIS
Fourth Amendment (Excessive Force)
Pursuant to 42 U.S.C. § 1983**

81.     Paragraphs 1-72 are incorporated herein by reference.

82.     Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment's objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 388 (1989).

83.     To state a claim for excessive force under the Fourth Amendment, a Plaintiff must show that a seizure occurred and that it was objectively unreasonable.

84.     The test of Fourth Amendment reasonableness of force used during a seizure is whether, under the totality of the circumstances, a law enforcement officer's actions are objectively reasonable in light of facts and circumstances confronting him, without regard to his underlying intent or motivations. See Graham, 490 U.S. at 397.

85.     DAVIS used physical force against BRITTAIN by firing a bullet at him with the intent of causing serious injury or death.

86.     The bullet fired by DAVIS entered BRITTAIN'S neck causing serious injury and ultimately death.

87.     When DAVIS used the force against BRITTAIN, BRITTAIN did not present as a significant or deadly threat to anyone.

88.     DAVIS used force that was not objectively reasonable.

89.     The force used was excessive, unlawful, and used solely for the purpose of causing physical pain, injury, and/or death.

90.     As a direct and proximate result of the Defendant's conduct, Plaintiff's Decedent

suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

91.      As a direct and proximate result of the Defendant's conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## COUNT III

**Plaintiff KING v. Defendant RICE**
**Fourth Amendment (Unlawful Imprisonment)**
**Pursuant to 42 U.S.C. § 1983**

92.      Paragraphs 1-72 are incorporated herein by reference.

93.      A lawful seizure can turn unlawful if a Plaintiff is held in custody after the probable cause that permitted the seizure is vitiated.

94.      RICE placed KING under physical arrest.

95.      Pursuant to federal law, RICE was required to release KING as soon as it was determined that there was no lawful basis to continue to detain him.

96.      KING, however, remained in handcuffs, locked in the rear of a patrol vehicle, for approximately three hours, despite RICE learning almost immediately after taking KING into custody that he no longer had a lawful basis to keep KING in custody.

97.      An Arkansas State Trooper, and not RICE, freed KING from custody.

98.      As a direct and proximate result of the Defendant's conduct, KING suffered embarrassment, humiliation, physical and psychological harm, and pain and suffering.

99.      As a direct and proximate result of the Defendant's conduct, Plaintiff KING has and will incur attorneys' fees and litigation costs.

## COUNT IV

**Plaintiffs v. Defendant STALEY/SHERIFF (Individual Capacity)**
**Fourth Amendment (Supervisor Liability)**
**Pursuant to 42 U.S.C. § 1983**

100.    Paragraphs 1-72 are incorporated herein by reference.

101.    Supervisor liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervisor and the alleged constitutional violation.

102.    STALEY/SHERIFF knew about DAVIS' mental health issue and need for prescribed medication.

103.    STALEY/SHERIFF knew the danger of DAVIS patrolling while not being emotionally stable.

104.    STALEY/SHERIFF disregarded the risk and knowingly failed to supervise DAVIS.

105.    As a direct and proximate result of the Defendant's conduct, Plaintiffs suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

106.    As a direct and proximate result of the Defendant's conduct, Plaintiffs have and will incur attorneys' fees and litigation costs.

## COUNT V

**Plaintiffs PAYNE and KING v. Defendant STALEY/SHERIFF (Official Capacity)**
**Fourth and Fourteenth Amendments—Monell Liability**
**Pursuant to 42 U.S.C. § 1983**

107.    Paragraphs 1-72 are incorporated herein by reference.

108.    A lawsuit filed against a government official in his official capacity is the same as a lawsuit against the employing public entity; in this case, the County of Lonoke, Arkansas.

109.    "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

110.    During all relevant times, DAVIS was acting pursuant to the policies and procedures of STALEY/SHERIFF.

111.    An unconstitutional government policy may be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business. See Brewington v. Keener, 902 F.3d 796 (8th Cir. 2018).

112.    STALEY/SHERIFF is a policymaker for Lonoke County, Arkansas, and the Lonoke County Sheriff's Office.

113.    As such, STALEY/SHERIFF'S decision not to supervise DAVIS' known mental health issue as discussed above was the policy of Lonoke County, Arkansas.

114.    The identified policy of STALEY/SHERIFF and Lonoke County was the moving force that caused BRITTAIN'S constitutional injury.

115.    As a direct and proximate result of the Defendant's conduct, Plaintiffs suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

116.    As a direct and proximate result of the Defendant's conduct, Plaintiffs have and will incur attorneys' fees and litigation costs.

## COUNT VI

**Plaintiffs PAYNE and KING v. Defendants**
**Violation of The Arkansas Civil Rights Act**
**(Arkansas Code § 16-123-105)**

117.    Paragraphs 1-72 are incorporated herein by reference.

118.    The Arkansas Civil Rights Act provides, *"Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress."*

119.    The Defendants' conduct constitutes a violation of the Arkansas Civil Rights Act of 1993 for the same reasons the Defendants' conduct violates 42 U.S.C. § 1983.

120.    As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

121.    As a direct and proximate result of the Defendants' conduct, Plaintiffs have and will incur attorneys' fees and litigation costs.

## COUNT VII

**Plaintiffs PAYNE and KING v. Defendants DAVIS**
**Assault**
**(Arkansas State Law)**

122.    Paragraphs 1-72 are incorporated herein by reference.

123.    During all relevant times, Defendants were acting as employees of SHERIFF in the course and scope of their employment.

17

124.    DAVIS acted in such a manner as to create a reasonable apprehension of immediate harmful or offensive contact upon the person of BRITTAIN and KING.

125.    DAVIS unlawfully pointed a firearm at BRITTAIN and KING.

126.    DAVIS intended to cause BRITTAIN and KING to be in fear of injury or death.

127.    DAVIS' actions placed BRITTAIN and KING in fear of injury or death.

128.    As a direct and proximate result of the Defendant's conduct, Plaintiffs suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

129.    As a direct and proximate result of the Defendant's conduct, Plaintiffs have and will incur attorneys' fees and litigation costs.

## COUNT VIII

### Plaintiff PAYNE v. Defendants DAVIS
### BATTERY
### (Arkansas State Law)

130.    Paragraphs 1-72 are incorporated herein by reference.

131.    During all relevant times, Defendants were acting as employees of STALEY/SHERIFF in the course and scope of their employment.

132.    DAVIS acted with intent to cause some harmful or offensive contact with BRITTAIN.

133.    DAVIS acted with the intent to create the apprehension of some harmful or offensive contact with BRITTAIN.

134.    DAVIS unlawfully pointed a firearm at BRITTAIN.

135.    DAVIS caused harmful or offensive contact with BRITTAIN that caused BRITTAIN to suffer physical injury and death.

136.     DAVIS fired a bullet into BRITTAIN'S body causing injury and death.

137.     As a direct and proximate result of the Defendant's conduct, Plaintiff's Decedent suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

138.     As a direct and proximate result of the Defendant's conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

**COUNT IX**

**Plaintiff KING v. Defendants RICE**
**False Imprisonment**
**(Arkansas State Law)**

139.     Paragraphs 1-72 are incorporated herein by reference.

140.     During all relevant times, RICE was acting as an employee of STALEY/SHERIFF in the course and scope of their employment.

141.     False imprisonment is the unlawful violation of the personal liberty of another consisting of detention without sufficient legal authority. See Grandjean v. Grandjean, 315 Ark. 620 (1994).

142.     RICE placed KING under physical arrest using a firearm, handcuffs, and a locked patrol vehicle.

143.     Pursuant to federal law, RICE was required to release KING as soon as it was determined that there was no lawful basis to continue to detain him.

144.     Pursuant to Arkansas Rules of Criminal Procedure, RICE was required to release KING after 15 minutes.

145.    KING remained in handcuffs, locked in the rear of a patrol vehicle, for approximately three hours, despite RICE learning almost immediately after taking KING into custody that he no longer had a lawful basis to keep KING in custody.

146.    An Arkansas State Trooper, and not RICE, freed KING from custody.

147.    As a direct and proximate result of the Defendant's conduct, KING suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

148.    As a direct and proximate result of the Defendant's conduct, Plaintiff has and will incur attorneys' fees and litigation costs.

## COUNT X

### Plaintiffs v. Defendants
### Negligence
### (Arkansas State Law)

149.    Paragraphs 1-72 are incorporated herein by reference.

150.    During all relevant times, Defendants were acting as employees of STALEY/SHERIFF in the course and scope of their employment.

151.    It was the duty of Defendants, before and at the time of the occurrence, to use ordinary care for the safety of Plaintiffs.

152.    DAVIS negligently went on patrol without required medication knowing that he was emotionally unstable.

153.    DAVIS and RICE negligently failed to act in accordance with known policies and training, and state law.

154.    STALEY/SHERIFF negligently failed to supervise DAVIS as discussed herein.

155.   The negligent conduct of the Defendants caused the Plaintiffs' injuries and damages.

156.   As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

157.   As a direct and proximate result of the Defendants' conduct, Plaintiffs have and will incur attorneys' fees and litigation costs.

<u>**COUNT XI**</u>

**Plaintiffs v. Defendant DAVIS**
**Outrage**
**(Arkansas State Law)**

158.   Paragraphs 1-72 are incorporated herein by reference.

159.   During all relevant times, DAVIS acted as an employee of STALEY/SHERIFF in the course and scope of his employment.

160.   DAVIS willfully and wantonly engaged in the aforementioned extreme and outrageous conduct.

161.   DAVIS' conduct is the proximate cause of the Plaintiffs' emotional distress.

162.   As a direct and proximate result of the Defendant's conduct, Plaintiffs suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

163.   As a direct and proximate result of the Defendant's conduct, Plaintiffs have and will incur attorneys' fees and litigation costs.

## COUNT XII

**Plaintiff PAYNE v. Defendants**
**Survival**
**(Arkansas Code § 16-62-101)**

164.    Paragraphs 1-72 are incorporated herein by reference.

165.    BRITTAIN was killed because of the Defendants' reckless and wrongful conduct.

166.    PAYNE is the duly appointed Personal Representative of the ESTATE.

167.    PAYNE, as the Personal Representative of the Estate, is asserting this Survival claim on behalf of BRITTAIN, to recover all financial losses discussed herein permitted by law.

168.    As a direct and proximate result of the Defendants' conduct, Plaintiff's Decedent suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and death.

169.    As a direct and proximate result of the Defendants' conduct, ESTATE has and will incur attorneys' fees and litigation costs.

## COUNT XIII

**Plaintiff PAYNE v. Defendants**
**Wrongful Death**
**(Arkansas Code § 16-62-102)**

170.    Paragraphs 1-72 are incorporated herein by reference.

171.    BRITTAIN was killed because of the Defendants' reckless and wrongful conduct.

172.    BRITTAIN never married and never had biological or adopted children.

173.    BRITTAIN is survived by his paternal grandmother, Rebecca J. Payne, who stood in *loco parentis*; biological mother, Tamara S. Lawrence (Leggett); biological father, Michael W. Brittain; sister, Mystic C. Brittain; half-sister, Charli S. Brittain; and half-brothers, Dakota D. Leggett, Marshall W. Pruitt, and Mason W. Pruitt.

174.    PAYNE is the duly appointed Personal Representative of the ESTATE.

175.    PAYNE, in her capacity as Personal Representative of the ESTATE, is asserting wrongful death claims on behalf of BRITTAIN'S paternal grandmother, Rebecca J. Payne; biological mother, Tamara S. Lawrence (Leggett); biological father, Michael W. Brittain; sister, Mystic C. Brittain; and half-sister, Charli S. Brittain; to recover all financial losses discussed herein as permitted by law.

176.    PAYNE is not asserting wrongful death claims on behalf of BRITTAIN'S half-brothers, Dakota D. Leggett, Marshall W. Pruitt, and Mason W. Pruitt.

177.    As a direct and proximate cause of Defendants' conduct, which caused BRITTAIN'S wrongful death, PAYNE and BRITTAIN'S survivors and heirs suffered a financial loss associated in large part with mental anguish, lost services, society, guidance, companionship, and comfort.

178.    As a direct and proximate result of the Defendants' conduct, ESTATE has and will incur attorneys' fees and litigation costs.

## COUNT XIV

### Plaintiffs v. Defendant STALEY/SHERIFF (Official Capacity)
### Direct and Vicarious Liability
### (Arkansas State Law)

179.    Paragraphs 1-72 are incorporated herein by reference.

180.    During all relevant times, DAVIS and RICE were acting as employees of STALEY/SHERIFF in the course and scope of their employment.

181.    STALEY/SHERIFF knew, or in the exercise of reasonable care should have known, that DAVIS subjected others to an unreasonable risk of harm.

182.    STALEY/SHERIFF was negligent in supervising DAVIS.

183.    STALEY/SHERIFF'S negligence in supervising DAVIS was a proximate cause of Plaintiffs' injuries and damages.

184.    As such, STALEY/SHERIFF (Official Capacity) is vicariously liable for DAVIS and RICE'S aforementioned negligent and tortious conduct.

185.    As a direct and proximate result of the Defendant's conduct, Plaintiffs suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.

186.    As a direct and proximate result of the Defendant's conduct, Plaintiffs have and will incur attorneys' fees and litigation costs.

## V.  REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that judgment be entered in their favor as follows:

A.    **Declaratory Judgment:** Providing that the Defendants' individual and collective conduct violated Plaintiffs and BRITTAIN'S survivors and heirs' state and/or federal rights;

B.    **Compensatory Damages:** Including, but not limited to, the monetary value associated with the following: violations of legal rights, emotional distress, emotional injury, embarrassment, mental anguish, loss of reputation, loss of support, physical injury, pain and suffering, loss of enjoyment of life, loss of life, and death;

C.    **Punitive damages** as permitted by law;

D.    **Equitable Relief:** An admission of the allegations stated in the First Amended Complaint, in writing, and an oral and written apology for same, in person, from the Defendants;

E.    **Attorney's Fees and Costs**; and

F. **Discretionary Damages and Relief:** Such other financial or equitable relief that the Court deems reasonable and just.

## VI. JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury on all claims/issues in this matter that may be tried before a jury.

**Respectfully Submitted,**

*Devon M. Jacob*                                      **Date: November 22, 2023**

**DEVON M. JACOB, ESQUIRE**
PA Bar Number: 89182
**JACOB LITIGATION, INC.**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com
(Plaintiffs' Counsel)

**BENJAMIN L. CRUMP, ESQUIRE**
FL Bar Number: 72583
**BEN CRUMP LAW, PLLC**
122 S. Calhoun Street, Tallahassee, Florida 32301
(850) 224-2023 | court@bencrump.com
(Plaintiffs' Counsel) (Pro Hac Vice to be Filed)

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**REBECCA J. PAYNE, et al.,**                                              **PLAINTIFFS**

**v.**                              **Case No. 4:22-cv-00588 KGB**

**MICHAEL C. DAVIS, et al.,**                                           **DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I served a copy of this FIRST AMENDED

COMPLAINT, via ECF, on all counsel of record.

*Devon M. Jacob*                                    **Date: November 22, 2023**
**DEVON M. JACOB, ESQUIRE**