# ASSOCIATION OF ARKANSAS COUNTIES RISK MANAGEMENT FUND

## GENERAL LIABILITY PROTECTION AGREEMENT
### FUND YEAR 2022

AN ASSESSABLE GROUP MANAGEMENT FUND
HEREIN CALLED, "THE FUND".

**EXHIBIT**

**8**

exhibitsticker.com

In consideration of the payment of the contribution, in reliance upon the statements in the Protection Summary made a part hereof and subject to all of the terms of this Agreement and the Membership Agreement, the Fund agrees with the Members as follows:

### 1. PROTECTION AGREEMENT – CLAIMS – MADE

1.1     Constitutional and Civil Rights Liability.  Unless protection is excluded elsewhere in this Agreement, the Fund will pay on behalf of the Member all sums which the Member shall be legally (specifically excluding any liability for which immunity is provided by either statutory law or common law) obligated to pay as ultimate net loss on account of federal or state constitutional or civil rights liability (or tort liability for which there is no immunity) because of:

> County Entities' Errors and Omissions,
> County Officials' Errors and Omissions,
> County Employees' Errors and Omissions,

by reason of:

> Employee Discipline and Dismissal,
> Law Enforcement,
> Use of Force,
> Jail,
> or other County Operations,

caused by an occurrence subsequent to the retroactive date shown in Item 6 of the Protection Summary accompanying this Protection Agreement and for which a claim is made against the Member while this Protection Agreement is continuously in effect or renewed without any intervening lapse in General Liability protection of the Member by the Fund.

1.2.     Claim Notice.  Notice of a claim will be considered made to the Fund when written notice of such claim is received by the Fund Manager as Agent for Notice of Claims.

### 2. PROTECTION EXCLUSIONS

2.1     This Agreement does not apply to, does not provide protection for, and does not provide defense for:

2.1.1.     Individual liability for conduct that is outside the course and scope of an official's or employee's official county duties or conduct that is contrary to the official policy of the county.

2.1.2.     Individual liability when the official or employee has waived any available immunity available to them.

2.1.3.     Official capacity liability when the Quorum Court has passed an ordinance waiving any available immunity on behalf of its officials or employees.

GLPA                                                                                                           Revised 2020

2.1.4. Wrongful Personal Gain, including any personal gain, personal profit, or personal advantage to which the member was not entitled, including but not limited to remuneration paid in violation of law.

2.1.5. Intentional Misconduct, including but not limited to unethical or unlawful solicitation, acceptance, or receipt of any property, money, or valuable thing (including sexual gratification) for his/her use or benefit on account of, connected with, or growing out of any contract or transaction with or on behalf of the county; corruption, gross immorality, or criminal conduct under color of law; sexual contact, sexual activity, or sexual abuse while acting under color of law; or conduct that is outrageous, beyond all bounds of decency, or utterly intolerable in a civilized society.

2.1.6. Pollution Claims, including: claims arising out of actual, alleged or threatened pollution; the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; any loss, cost or expense arising out of any governmental direction or request that any person or entity test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize pollutants; and any loss, cost or expense incurred by a governmental unit or any other person or entity to test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize pollutants. "Pollutant" means solid, liquid, gaseous or thermal irritant or contaminant (including, but not limited to, smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste material). "Pollution" means any solid, liquid, or gas that renders another solid, liquid, or gas foul or unclean.

2.1.7. Auto Claims, including claims arising from the ownership or use of any automobile or other motor vehicle or motorized equipment.

2.1.8. Claims by Counties, including claims *by* any county against any entity or person.

2.1.9. Claims against Members by another Member, including claims by or on behalf of any member against any other member.

2.1.10. Claims by Members, including any claims filed by or on behalf of any member against any other person or entity.

2.1.11. Breach of Contract claims, including any claim alleging breach of a contract.

2.1.12. Untimely Claims, including claims not timely presented as required by this Protection Agreement.

2.1.13. Statutory Duty Claims, including penalties or liabilities imposed upon counties, county officials, or county employees for failure to perform affirmative duties required by laws other than civil rights statutes (e.g., liability for failure to timely return a writ of execution, violation of copyright laws, violation of wage and hour laws, violation of FMLA, USERRA, etc.).

2.1.14. Wage and Hour Liability Claims, including overtime compensation claims or other liability asserted under the wage and hour laws.

2.1.15 Employment claims where the official refuses to substantially comply with the Fund's legal advice regarding employee discipline or termination or other source of liability due to employment conditions which are covered by this Agreement. (e.g., hostile work environment, harassment, etc.) Before an employment claim is denied under this Section, it shall be presented to the Board of Trustees for final decision upon a majority vote. The elected official shall be given the opportunity to explain their refusal to the Board of Trustees.

2.1.16. Illegal Exaction Claims, including claims seeking recovery of an alleged illegal exaction or unauthorized expenditure.

2.1.17. Condemnation Claims, including claims for compensation by reason of alleged condemnation (or alleged inverse condemnation) of private property for a public use or benefit.

2.1.18. ADA Title II Claims Seeking Facility Compliance, including claims seeking a court order compelling the county to provide facilities that are accessible to the disabled, such as wheel chair ramps, elevators for courtrooms not on ground level, restrooms that will accommodate wheelchairs, and etc. (This Agreement provides protection for other ADA liability claims.)

2.1.19. Crimes, Fines, Penalties, Forfeitures, or claims seeking to impose a criminal conviction, a fine, a penalty, or forfeiture under any civil or criminal statute or regulation of any government or department or agency thereof.

2.1.20. Non-Money Relief, including claims for injunctive relief; mandamus; declaratory judgment; or other non-money relief. (A request for attorney's fees alone, on an otherwise non-monetary relief claim, will not create a duty to cover or defend under this Agreement.)

2.2. Except for the assertion of immunity and other defenses available as a matter of law, this Agreement does not provide protection for liability (including attorney fees) arising from the following:

2.2.1. Negligence, including negligence of any degree.

2.2.2. Punitive Damages.

2.2.3. Consequential Damages, including claims for indirect or consequential loss of any kind.

2.2.4. Conduct for which there is immunity, including claims for which tort immunity, sovereign immunity or any other immunity is provided by Arkansas, United States, or other law, specifically including tort immunity under Ark. Code Ann. § 21-9-301.

2.2.5. Criminal Prosecution Conduct, including claims arising from advocatory conduct related to criminal proceedings.

2.2.6. Claims arising from cyber security breaches or other computer problems.

2.2.7. Religious display claims.

2.2.8. Defense only is available for the following individuals who are not employees of the Named Member (as defined by the Fair Labor Standards Act) but who are licensed health care providers and who also meet the requirements of 2.2.9.;

2.2.8.1. They are an independent contractor of the Named Member, who provides medical care to inmates in the county owned and operated detention facility, and who is specifically named and designated by county ordinance as the Official Healthcare Provider of a county owned and operated detention facility; or

2.2.8.2. They are an employee of the independent contractor as defined by the Fair Labor Standards Act.

2.2.9. Any individual who meets the requirements in 2.2.8 must also comply with the following before they are eligible for defense only under this Agreement:

2.2.9.1. They shall attend at least one training every calendar year, presented by the Fund, on inmate medical care; and

2.2.9.2. They shall provide to the Fund proof of their current licensure status annually; and

2.2.9.3. They shall provide to the Fund proof of their current medical malpractice insurance

coverage.

2.2.10. Defense under 2.2.8. and 2.2.9. is only is available for licensed health care providers for the following claims:

2.2.10.1. Allegations of federal or state civil rights violations, or federal or state constitutional rights violations, arising from the performance of their contractual duties, for or on behalf of the county owned and operated detention facility.

2.2.10.2. This Agreement expressly excludes defense for medical malpractice.

2.3    This Agreement does not apply to, does not provide protection for, and does not provide defense for:

2.3.1.    Constables.

2.3.2.    Municipalities, including claims arising from services provided by the Named  Member for a municipality or other entity pursuant to a contractual Agreement (e.g., contract law enforcement services for a city within the county) but not otherwise required by law (unless any additional "Metro Contribution" required by the Fund is paid by or through the Named Member).

2.3.3.    Joint Ventures, including any non-member engaged in a joint venture with the Named Member.

2.3.4.    Loaned/Borrowed Servants, including loaned or borrowed servants under any circumstance where tort immunity would not be available under Arkansas law as a defense to claims of negligence.

2.3.5.    Health Care Providers, including hospitals, nursing homes, and other health care facilities or the employees thereof (e.g., a non-profit corporation) except as provided for in 2.2.8. through 2.2.10.

2.3.6.    Uncertified Personnel, including claims arising out of any conduct by any law enforcement officer or firefighter not certified as required by Arkansas law ("certified" shall include those who have completed all requirements for certification and shall include those who are legally permitted to act as "certified" but have not yet actually received a certificate evidencing a certified status); any conduct by any law enforcement officer or firefighter performed for a third party other than the Named Member not in the performance of law enforcement or firefighter activities of the Named Member; any conduct by any certified law enforcement officer or firefighter, whether or not that officer or firefighter is an employee of the Named Member, to the extent that officer's or firefighter's conduct is not permitted by or done in the manner required by Arkansas law enforcement or firefighter certification standards for that officer's or firefighter's level of certification; any conduct by a non-employee or auxiliary law enforcement officer or firefighter to the extent that officer's or firefighter's conduct is not done in response to the contemporaneous request of a certified law enforcement officer or a certified firefighter, respectively, who is an employee of the Named Member while acting in the performance of law enforcement or firefighter activities of the Named Member.

## 3.    DEFENSE AND SUPPLEMENTARY PAYMENTS

3.1.    Defense Duty. Unless the duty to defend is otherwise excluded by this Agreement, the Fund shall have the right and duty to defend any suit against the Member seeking recovery of damages for which protection is provided by this Agreement allegedly due on account of improper or omitted performance by the Named Member or an official or employee of the Named Member in the performance of his or her official or employee duties on behalf of the Named Member in accord with the official policy of the Named Member including (for the purpose of asserting tort immunity which is expressly not waived by any Member) any such suit claiming a right to recover damages in tort even if any of the allegations for damages are groundless, false, fraudulent, or unavailable by law (and may make such investigation and settlement of any claim or suit as it deems expedient and as is permitted by Ark. Code Ann. § 21-9-302), but the Fund shall not be obligated to defend any suit after the applicable limit of the Fund's liability has been exhausted.

3.2. Defense Costs. The Fund will pay in addition to the applicable limit of the Fund's liability:

3.2.1. Fees and costs incurred by the Fund in investigating and defending any claim or suit;

3.2.2. All expenses incurred by the Fund, all costs taxed against the Member in any suit defended by the Fund, and all interest which accrues after entry of any judgment the Fund is obligated to pay pursuant to this Protection Agreement and before the Fund has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Fund's liability thereon;

3.2.3. Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this Agreement, but the Fund shall have no obligation to apply for or furnish any such bonds and

3.2.4. Reasonable expenses incurred by the Member at the Fund's request, excluding actual loss of wages or salary.

3.3. Cooperation Duty.

3.3.1. The Fund shall have the right to associate with the Member in the defense and control of any claim or proceeding for which protection may be afforded by this Agreement. In such event the Member shall cooperate fully with the Fund.

3.3.2. The Fund shall have the right to withdraw defense and/or protection to any covered entity or person if they fail to cooperate in their own defense. Failure to cooperate may be evidenced by not contacting the Fund, or the defense attorney assigned by the Fund, prior to the first filing deadline, or failure to stay in contact with the Fund and the defense attorney assigned by the Fund throughout the course of litigation. It may also be evidenced by failure to comply with discovery requests or other duties imposed by the court or by the Rules of Civil Procedure.

## 4. MEMBERS COVERED

4.1. Members Defined. Each of the following is a Member under this Agreement to the extent set forth below:

4.1.1. The Named Member as stated in the Protection Summary accompanying this Protection Agreement.

4.1.2. Any person holding one of the following elective offices of county government: county judge, county clerk, circuit clerk, sheriff, collector, treasurer, assessor, coroner, or justice of the peace, whether elected or appointed, or employee of the Named Member, while acting within his or her official or employee capacity in the performance of governmental activities of the Named Member pursuant to the official policy of the Named Member.

4.1.3. Auxiliary law enforcement officers and auxiliary firefighters of the Named Member who are not law enforcement employees or firefighter employees of any entity other than the Named Member, in the performance of law enforcement or firefighter activities of the Named Member while acting pursuant to the contemporaneous request of and under the direct supervision of a law enforcement employee or firefighter of the Named Member acting in the performance of law enforcement or firefighter activities of the Named Member.

4.1.5. Fire departments that are county owned and operated, and which are created by county ordinance, including their employees and volunteers.

4.1.6. Scheduled independent, but county-formed, boards and commissions appointed by the Named Member (excluding hospitals, nursing homes, and other facilities providing health care, including providers of medical transportation).

4.1.7. Licensed attorney(s) designated by county ordinance as a county civil attorney (or county attorney) pursuant to Arkansas Code Annotated 16-21-114 in the performance of civil duties for or on behalf of the county

GLPA                                                                 Revised 2020

(excluding, specifically, any duties for which there is prosecutorial or other immunity from liability).

4.1.8. Emergency medical service (EMS) providers who work for the county as county officials or employees through a scheduled, county-owned and county-operated emergency medical service, provided the required "EMS" contribution is paid prior to the date of the occurrence.

4.1.9 County Election Commissioners from and after the effective date of Act 1422 of 1999 (codified as Ark. Code Ann. 7-4-102), which Act created the *county* office of County Election Commissioner (which office was theretofore a *state* office and which *state* officers were/are not entitled to protection under this Agreement).

4.2. Additional Protection and Required Contributions.

4.2.1. EMS Protection: An additional "EMS" contribution is required before the protection otherwise provided by this Agreement will be extended to an emergency medical service and no protection is provided the county, county officials, or county employees for liability or alleged liability arising out of the provision of emergency medical services unless the county's EMS is county-owned and county-operated and the additional EMS contribution is paid.

4.2.2. Metro Protection: An additional "Metro" contribution is required before the protection otherwise provided by this Agreement will be extended to the Named Member for services provided to a municipality or other entity by the County pursuant to a contractual Agreement but not otherwise required by law (e.g., contract law enforcement services for a city within the county).

4.2.3. County Election Commissioner Protection: An additional "County Election Commissioner" contribution is required before the protection otherwise provided by this Agreement will be extended to County Election Commissioners.

## 5. LIMITS OF LIABILITY

5.1. Liability Limit. Regardless of the number of (1) Members protected under this Agreement, (2) persons or organizations who sustain damages, (3) claims made or suits brought on account of Civil Rights Liability, the Fund shall only be liable for the ultimate net loss as stated in the Protection Summary accompanying this Protection Agreement and any insurance collectible by the Member.

5.2. Collectible Insurance. In no event shall the Fund be liable for more than the limit of the Fund's Liability as stated in the Protection Summary less any insurance collectible by the member.

5.3. Annual Limit. For the purpose of determining a member's annual limit of liability, a claim shall be considered made in the year in which the Complaint is filed in court, or the year in which a pre-litigation settlement is finalized.

## 6. EXTENDED REPORTING

6.1. Cancellation. In the event that this Certificate is canceled or non-renewed for any reason other than non-payment of contribution, the Member shall have an additional ninety (90) days from date of such cancellation or non-renewal to report claims arising out of an occurrence subsequent to the retroactive date but not reported to the Fund prior to the expiration or cancellation of this Certificate.

6.2. Purchase of Extending Reporting. The Member may purchase extended reporting period protection in increments of one (1) year for up to a maximum of three (3) years for an additional contribution not to exceed one hundred percent (100%) of the contribution charged the previous year. Such contribution must be paid in full before extended reporting period protection is afforded.

6.3. Timeliness. The purchase of extended reporting period protection must be requested within ninety (90) days of expiration/cancellation of coverage.

## 7. DEFINITIONS

When used in this Agreement (including endorsements forming a part hereof):

7.1. "Automobile" means land motor vehicle, trailer, or semi-trailer designed for use on public roads which is licensed for highway use.

7.2. "Auxiliary" shall have the meaning used by Arkansas law defining the certification requirements of law enforcement officers and firefighters.

7.3. "Civil Duties" means those activities not intimately associated with the judicial phase of the criminal process.

7.4. "Civil Rights Liability" means damages imposed upon a member and arising out of a violation of the U.S. or Arkansas Constitution or Federal or Arkansas Civil Rights Statutes caused by the Named Member or an official or employee of the Named Member acting within the course of that official's or employee's official duties on behalf of the Named Member and not otherwise excluded by this Agreement. Civil Rights Liability shall not include any tort or other claim for which immunity is provided by law and all immunity provided by U.S. or Arkansas law including but not limited to "Tort Immunity" provided by Act 165 of 1969 (Ark. Code Ann. §§ 21-9-103, et seq.) Which immunity is expressly claimed.

7.5. "Civil Rights Statutes" means statutes providing a civil cause of action for an alleged violation of the U.S. or Arkansas constitution or an alleged violation of statutes prohibiting arbitrary discrimination on the basis of race, color, religion, national origin, gender, age, or disability.

7.6. "County Operations" means activities or operations of the Named Member for which tort immunity is available as a defense to tort claims alleging negligence by the Named Member or by an official or employee of the Named Member.

7.7. "County-formed" means that the entity described as county-formed came into existence and continues in existence by means of an official act of the county in the manner authorized by Arkansas law.

7.9. "Errors and Omissions" means conduct that is contrary to an affirmative duty to act or conduct omitted in the face of an affirmative duty to act (and does not mean negligence nor does it mean that any protection is provided for negligence liability because statutory tort immunity and all other immunity is expressly claimed and is not waived).

7.10. "Occurrence" means an event, or a continuous or repeated exposure to conditions, which unexpectedly or unintentionally results in Constitutional or Civil Rights Liability. All such exposure to substantially the same general conditions existing at or emanating from one event or continuous course of events shall be deemed one Occurrence, without regard to how many persons were involved or were damaged.

7.11. "Ultimate net loss" means the sum actually expended or payable in cash to procure settlement or satisfaction of the Member's legal obligation for payment damages either by (1) final adjudication or (2) compromise with the written consent of the Fund; however, ultimate net loss shall not include salaries of the Member's employees or expenses incurred by the Member or the Fund in investigation, adjustment or litigation and shall not include any amounts for which no legal liability exists because of immunity or minimum limits of liability available by law to Arkansas political subdivision or to officials or employees of Arkansas political subdivision.

7.12. "Damages" shall include back pay but the Fund shall not be liable for the employer's obligation for tax payments, retirement contributions, and other employee benefits.

## 8. CONDITIONS

8.1.    Membership Agreement Requirements.  The Named Member shall comply with the Member's obligations described in the Association of Arkansas Counties Risk Management Fund Membership Agreement.

8.2.    Affirmative Risk Management Requirements.

8.2.1.    Employment Policy:  Employee discipline and dismissal liability protection shall not be provided by the Fund unless the Named Member has a constitutionally correct, written employment policy adopted by county ordinance. (The model employment policy recommended by the AACRMF Trustees is and incorporated by reference as policies that will be deemed constitutionally correct for the purpose of satisfying the risk management requirements of this section.)

8.2.2.    Use of Force Policy:  Use of force liability protection shall not be provided unless the Named Member has a constitutionally correct, written use of force policy adopted by county ordinance.

8.2.3.    Jail Policies: Jail operations liability protection shall not be provided unless the Named Member has the written jail policies required by Arkansas' Minimum Jail Standards 3-1004, 6-1001, 6-1002, 6-1003, 7-1001, and 7-1002 (which may be approved as such, in advance, by the Fund.).

8.3.    Member's Duties in the Event of Occurrence, Claim, or Suit.

8.3.1.    In the event of an occurrence, written notice containing particulars sufficient to identify the Member and also reasonably obtainable information with respect to the time, place, and circumstances thereof, and the names and addresses of the claimant and of available witnesses, shall be given by or for the Member to the Fund promptly, but, not less than seven (7) days before the legal deadline for filing, with a court, any answer or other legally required response.

8.3.2.    If claim is made or suit is brought against the Member, the Member shall immediately forward to the Fund every demand, notice, summons or other process received by him or his representative.

8.3.3.    The Member shall cooperate with the Fund and, upon the Fund's request, assist in making settlements, enforce any right of contribution or indemnity against any person or organization who may be liable to the Member, attend hearings and trials, and assist in securing and giving evidence and obtaining the attendance of witnesses.  The Member shall not voluntarily make any payment, assume any obligation, or incur any expense on purported behalf of the Fund.  The Named Member's duty of cooperation may include reinstatement of employment or other non-monetary relief.

8.4.    Action against the Fund.

8.4.1.    No action shall lie against the fund unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the Agreements, nor until the amount of the member's obligation to pay shall have been finally determined either by judgment against the Member after actual trial or by written agreement of the Member, the claimant, and the Fund.

8.4.2.    No person or organization shall have any right under this Agreement to join the Fund as a party to any action against the member to determine the member's liability, nor shall the Fund be impeded by the member or his legal representative.  Bankruptcy or insolvency of the Member shall not relieve the Fund of any of its obligations hereunder.

8.5.    Collectible Insurance.  The protection afforded under this Agreement shall apply as excess protection, not contributory, to any collectible insurance available to the Member and covering loss against which protection is afforded hereunder.  In such event the Fund shall be secondarily liable up to the limit of the Fund's liability less any insurance collectible by the Member.

8.6. Subrogation. In case of any payment by the Fund of any ultimate net loss hereunder, the Fund shall be subrogated to all the Member's rights of recovery therefore, and will act in concert with all other interests (including the member) concerned. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the member) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Fund is then to be reimbursed up to the amount paid hereunder; lastly, the interests (including the Member) of whom this coverage is in excess are entitled to claim the residue. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Member) concerned, in the ratio of their respective recoveries as finally settled.

8.7. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Agreement or stop the Fund from asserting any right under the terms of this Agreement; nor shall the terms of this Agreement be waived or changed, except by endorsement issued to form a part of this Agreement, signed by a duly authorized representative of the Fund.

8.8. Liability to Others. This Agreement is made for the benefit of the Named Member joined herein and no county official, employee, or other person shall have any legally enforceable rights under this Agreement against any Named member joined herein, the Fund, the Fund Manager, the Board of Trustees, the Association of Arkansas Counties; the Service Company, or attorneys for any of the foregoing, whether as third party beneficiaries or otherwise, this Agreement being one solely between the Named Members joined herein.

8.9. Declaration. By acceptance of this Agreement, the Named Member agrees that the statements in the Protection Summary, this Protection Agreement, and the Membership Agreement are its agreements and representations, that this Agreement is issued in reliance upon the truth of such representations, and that this Agreement embodies all agreements existing between the Named member and the Fund and any of its agents relating to this protection.

IN WITNESS WHEREOF, the Fund has caused this Agreement to be signed by the Fund Manager.

ASSOCIATION OF ARKANSAS COUNTIES RISK MANAGEMENT FUND

By: _____
        Fund Manager

12/21/21
_____
Date