**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**REBECCA J. PAYNE, *et al.*** **PLAINTIFFS**

**v.** **Case No. 4:22-cv-00588-KGB**

**MICHAEL C. DAVIS, *et al.*** **DEFENDANTS**

# ORDER

Before the Court is defendants John W. Staley and Nathan Rice's ("Defendants") motion to exclude the testimony of plaintiff's economic expert Stan Smith (Dkt. No. 44). Separate defendant Michael C. Davis filed a notice of adoption to Staley and Rice's motion (Dkt. No. 46). Plaintiffs Rebecca J. Payne, Jordan L. King, and James L. Crowder ("Plaintiffs") filed a response in opposition to Defendants' motion (Dkt. Nos. 47; 48). Defendants filed a reply to Plaintiffs' response (Dkt. No. 51).

For the reasons stated below, the Court denies Defendants' motion to exclude the testimony of plaintiff's economic expert Stan Smith (Dkt. No. 44).

## I. Factual Background

Plaintiffs allege that Staley, Rice, and Davis violated 42 U.S.C. § 1983, through the Fourth and Fourteenth Amendments, the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105 *et seq.* ("ARCA"), as well as Arkansas state law torts, when Noah Hunter Brittain was shot (Dkt. No. 14).

Defendants assert that Plaintiffs seek to offer the expert opinion of Dr. Stan Smith regarding damages (Dkt. No. 44, at 1). Specifically, the damages Smith proposes to testify about are: (1) loss of wages and employee benefits; (2) loss of household/family services; (3) loss of value of life; and (4) loss as a consequence of losing a loved one (Dkt. No. 44-1, at 1). Smith's testimony does not relate to damages suffered by plaintiffs King or Crowder (Dkt. No. 44-2, at

10–11). Defendants argue that Smith should not be permitted to testify as an expert in this case and that his report is also inadmissible (Dkt. No. 44, ¶ 2).

**II. Summary Of Arguments**

Defendants first argue that Smith's proffered testimony regarding "loss of value of life" damages is not relevant to any damages in this suit because Smith's calculation relies entirely on the "statistical value of life" and does not take Brittain's particular life into account (Dkt. No. 45, at 2–4).

Second, Defendants argue that Smith's testimony regarding other types of damages—namely loss of wages and employee benefits, loss of household/family services, and loss as a consequence of losing a loved one—seek to quantify alleged damages to the heirs of his estate, which Defendants argue are not recoverable damages under 42 U.S.C. § 1983 and Arkansas law (*Id.*, at 4–5).

Third, Defendants assert that Smith's opinion is not reliable and will not assist the jury with helpful, relevant, and reliable information (*Id.*, at 5–7). Defendants point to another case in which Smith's testimony regarding damages was excluded because, according to Defendants: (1) Smith's opinions were based on methodologies that could not be applied to the facts of the case in a meaningful or reproduceable way; (2) Smith's opinions invaded the province of the jury; and (3) Smith's opinion's would cause juror confusion (*Id.*, at 7). In support of their motion to exclude Smith's testimony and report, Defendants also offer the testimony of their own economic expert, William Pearson, whose report alleges several deficiencies in Smith's report (*Id.*).

In response, Plaintiffs assert that Smith's loss of life damages opinions were based on specific information about Brittain (Dkt. No. 47, at 6–8). Plaintiffs call the Court's attention to an exchange during Smith's deposition and then submit for the Court's review an email from Smith

in which Smith states that his opinion was based on information from Payne about the value Brittain placed on his own life, including Brittain's time spent with friends and his future prospects beyond high school (*Id.*, at 7–8). Plaintiffs further argue that Smith's deposition testimony indicates that Smith considered the value that Brittain would place on his life, but Smith saw no issue that would cause him to move off the "average person" with Brittain's age, gender, and race (*Id.*).

Second, Plaintiffs argue that Payne properly brings both a survival and wrongful death claim and asserts intentional torts in this suit (*Id.*, at 8–9). Therefore, damages suffered by Brittain's family members are not precluded as to all claims, and thus Smith's calculations of damages to those parties are relevant to issues at trial (*Id.*)

Third, Plaintiffs argue that Smith's testimony is reliable and will assist the jury in determining damages such as loss-of-life damages, which are a distinct element of recovery under Arkansas law (*Id.*, at 2–8). Plaintiffs argue that Pearson, Defendants' expert, is not qualified to render expert opinions in economics and used improper methodology to critique Smith's expert testimony (*Id.*, at 5–6).

In reply to Plaintiffs' response, Defendants argue that Smith intends to testify as to the statistical value of a life—a number which does not take into account the value Brittain would place on his own life (Dkt. No. 51, at 3).[1]

---

[1] Defendants also argue that Plaintiffs have attempted to circumvent the deadlines for filing *Daubert* motions by challenging Defendants' economic expert, William Pearson, in its response rather than in a separately filed motion. Written motions filed pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), were required to be filed on or before September 29, 2025 (Dkt. No. 43, at 2). Plaintiffs' response was filed on October 14, 2025 (Dkt. No. 47). Plaintiffs' response does not comport with Rule 7.2 of the *Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas* ("All motions . . . shall be accompanied by a brief consisting of a concise statement of relevant facts and appliable law."). However, Plaintiffs do not request that this Court exclude Pearson. Further, as observed,

## III. Legal Framework

Federal Rule of Evidence 702, as recently amended, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed R. Evid. 702.

Besides examining a proffered expert's qualifications, the Supreme Court stated in *Daubert* that the trial judge also has a gatekeeping responsibility to ensure that expert evidence is both relevant and reliable before admitting it. *Daubert*, 509 U.S. at 589; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999).

The Eighth Circuit articulates this function as a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

---

Defendants' relied upon Pearson in moving to exclude Smith (*see* Dkt. No. 45, at 7). For all of these reasons, the Court does not consider Plaintiffs' response as a separate *Daubert* motion challenging Pearson, but rather the Court considers Plaintiffs' argument regarding Pearson's report as relevant to Plaintiffs' response to Defendants' present motion.

*Academy Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 790 (8th Cir. 2024) (quoting *Johnson v. Mead Johnson & Co*, 754 F.3d 557, 561 (8th Cir. 2014)).

The party calling the expert witness to testify must show, by a preponderance of the evidence, that the expert's testimony is admissible. *Lauzon v. Senco Prod.*, Inc., 270 F.3d 681, 686 (8th Cir. 2001); *see* Fed. R. Evid. 702 (advisory committee's note to 2023 amendment) (clarifying that the preponderance standard applies to Rule 702 determinations of relevance and reliability).

In assessing an expert's proposed opinions and testimony, the Court may consider "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008) (internal citations omitted) (quoting *Lauzon*, 270 F.3d at 686–87 (8th Cir. 2001)). The purpose of these requirements "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

While the Court's reliability inquiry is rigorous, *Daubert* and its progeny "call for the liberal admission of expert testimony." *In re Bair Hugger Forced Air Warming Devices Prods. Liability Litig.*, 9 F.4th 768, 777 (8th Cir. 2021). The trial court's role is not to determine whether an expert's opinion is correct; it is an "expert witness's methodology, rather than [his] conclusions, that is the primary concern of Rule 702." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). Even if the Court "believes there are better grounds for some alternative conclusion, and

that there are some flaws in the scientist's methods, if there are good grounds for the expert's conclusion, it should be admitted." *Id.* (internal citations omitted).

## IV. Analysis

### A. Evidence Useful To The Finder Of Fact

Smith's four proposed damages calculations fall into two categories: (1) damages suffered by Brittain and (2) damages suffered by Brittain's family members. Smith's proposed testimony regarding Brittain's damages are the loss of value of life damages (Dkt. No. 44-1, at 11),[2] and loss of wages and employee benefits (*Id.*, at 3).[3] Smith's proposed testimony regarding damages to Brittain's family members are loss of household and family services (Dkt. No. 44-2, at 56) ("Q: This is about the losses to the family members, not to [Brittain], right? A: Correct. His own loses are established within his loss of enjoyment of life") and loss as a consequence of losing a loved one (Dkt. No. 44-1, at 13) (the damages "show the loss as a consequence of losing a loved one sustained by [Brittain's] grandmother, parents, and sisters").

#### 1. Brittain's Damages

Under Arkansas Code Annotated § 16-62-101 ("Arkansas Survival Statute"), in addition to other elements of damages, "a decedent's estate may recover for the decedent's loss of life as

---

[2] The Court notes that Smith describes these damages as "the loss of the value of life ("LVL"), also known as loss of enjoyment of life." (Dkt. No. 44-1, at 1). In Arkansas, courts distinguish "between loss-of-enjoyment-of-life damages" and "loss-of-life damages," recognizing that the former contemplates damages for loss of the enjoyment of life that are pre-death, while the latter loss-of-life damages only begin accruing at the point when life is lost, at death. *One Nat'l Bank v. Pope*, 272 S.W.3d 98, 102 (Ark. 2008) (internal citations omitted). Only loss-of-life damages are recoverable under the Arkansas Survival Statute. *Durham v. Marberry*, 156 S.W.3d 242, 248 (Ark. 2004). Therefore, the Court considers Smith's calculations to refer to loss-of-life damages.

[3] Defendants appear to assert that Brittain's wage loss damages calculation is an amount suffered by Brittain's family, rather than Brittain himself (Dkt. No. 45, at 4). The Court understands these damages to be purported losses suffered by Brittain himself considering that they are a calculation of wages Brittain did not earn for himself as a result of his death.

an independent element of damages." Ark. Code Ann. § 16-62-101(b). The Arkansas Supreme Court has construed the statute to allow for damages that a decedent would have placed on her own life. *Durham v. Marberry*, 156 S.W.3d 242, 248 (Ark. 2004); *Crouch v. Master Woodcraft Cabinetry, LLC*, Case No. 2:20-cv-00078-KGB, 2021 WL 4150206, at 4 (E.D. Ark. Sep. 13, 2021). An estate seeking loss of life damages "must present some evidence, that the decedent valued his or her life, from which a jury could infer and derive that value and on which it could base an award of damages." *One Nat'l Bank v. Pope*, 272 S.W.3d 98, 102 (Ark. 2008).

In reaching his conclusion regarding loss of value of life damages, Smith relies extensively on several studies of the "statistical value of life," an economic term of art that Smith says is used by government agencies to establish public policy. To calculate the statistical value of life, a researcher determines what amount an individual is willing to pay for a small reduction in mortality risks, and multiplies that amount by the number of people needed to save one human life. To use Smith's example:

> Assume that a safety device such as a carbon monoxide detector costs $46 and results in lowering a person's risk of premature death by one chance in 100,000. The cost per life saved is obtained by dividing $46 by the one in 100,000 probability, yielding $4,600,000.

(Dkt. No. 44-1, at 13).

Based on Smith's review of studies measuring the statistical value of life, Smith "estimates the central tendency of the range of the economic studies to be approximately $6.2 million in year 2025 dollars" (*Id.*, at 13). Smith then takes this number and expands it based on "the average value of statistical life and [Brittain's] life expectancy of 75.7 years" to conclude that the value of life for Brittain was $7,977,427 (*Id.*). Plaintiffs argue that Smith's testimony will assist the jury since "loss-of-life" damages are a distinct element of recovery under Arkansas law (Dkt. No. 47*,* at 6–7).

As this Court and others have previously noted, the value of a statistical life, whether used by government agencies or not, does not assist the jury in determining how Brittain valued his own life. *Hannibal v. TRW Vehicle Safety Sys.*, 2018 WL 3797500, at 2 (E.D. Ark. Aug. 8, 2018) (barring an expert from testifying regarding loss of life damages based on the value of a statistical life because it does not assist the jury in determining what value the decedent placed on her own life and was an unreliable methodology for determining the value of human life); *Crouch*, 2021 WL 415206, at 5 (citing *Hannibal* and stating "[t]his Court adopts the same reasoning and, therefore, excludes Dr. Scott's proposed testimony that would present for the jury's 'consideration the value that government agencies place on the statistical value of life'").

However, when examining the evidentiary threshold for an estate to seek loss of life damages, the Arkansas Supreme Court explained in *One National Bank v. Pope*, 272 S.W.3d 98 (Ark. 2008), that the estate must:

> must present *some* evidence, that the decedent valued his or her life, from which a jury could infer and derive that value and on which it could base an award of damages. While the Estate urges that mere proof of life and then death is sufficient, we disagree. That being said, we do not suggest that the evidence required be limited to direct evidence, as circumstantial evidence may certainly be used as well.

272 S.W.3d at 102–03 (emphasis in original). The Arkansas Supreme Court in *One National Bank* then examined what essentially was character evidence about the decedent presented by the decedent's surviving children and determined "that this circumstantial evidence was substantial evidence from which the jury could have inferred the value [the decedent] would have placed on her life and on which the jury could have awarded the Estate loss-of-life damages." *Id.* at 103.

Here, although Smith cites to several studies to support his determination of the statistical value of a life, in his report, he also provides evidence that he considered characteristics of Brittain's life, including the testimony of Brittain's grandmother and mother, in determining the

loss of value of life damages. Smith cites aggregated data and mentions Brittain in his report, including Brittain's age, race, and gender, the testimony of his grandmother and mother, and Brittain's interest in different career prospects (Dkt. No. 44-1, at 2–4, 11–13). Further, in support of their response to this motion, Plaintiffs highlight an exchange in Smith's deposition during which Smith explains he does not understand the question asked about this issue (Dkt. No. 47, at 7–8). In an effort to clarify that exchange, Smith's deposition testimony, and the basis of Smith's proposed opinions here, Plaintiffs offer an exchange in which Smith makes clear that Smith considered the value that Brittain placed on his own life in calculating the loss of value of life damages (Dkt. No. 47, at 8). This conclusion regarding what Smith considered in formulating his opinions is supported primarily by Smith's own report (Dkt. No. 44-1, at 2–3).

While the statistical value of a life may not tell the jury what value Brittain placed on his own life directly, the calculations coupled with Smith's other testimony—namely Brittain's specific life factors that were considered in making Smith's calculations—provides sufficient evidence from which a jury could infer how Brittain valued his life and on which a jury could base an award of damages.

For these reasons, this Court determines that Smith's proposed opinion and testimony meet the requirements for admissibility as required by Rule 702, since the calculation may present some evidence from which a jury could infer how Brittain valued his life and upon which the jury could base an award of damages.

**2. Brittain's Family's Damages**

Defendants argue that Smith's proposed testimony regarding damages suffered by Brittain's family should be excluded because those parties are not permitted to recover damages under Eighth Circuit and Arkansas state law precedent (Dkt. No. 45, at 4–5). Therefore, Defendants argue that any such testimony will not assist the jury.

Under Arkansas Code Annotated § 16-62-102 ("Arkansas Wrongful Death Statute"), whenever the death of a person is caused by a wrongful act, neglect, or default, and such action would have entitled the party injured to maintain an action and recover damages had death not ensued, the person who is liable "shall be liable to an action for damages." Ark. Code. Ann. § 16-62-102(a). Such actions must be brought by and in the name of the personal representative of the deceased person. Ark. Code. Ann. § 16-62-102(b).

However, under Arkansas Code Annotated § 21-9-301 ("Arkansas Immunity Statute"), certain entities are provided immunity from suit, including:

> All counties, municipal corporations, school districts, public charter schools, special improvement districts, law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies

Ark. Code. Ann. § 21-9-301. Such immunity applies to cases brought under the ACRA and for negligent tortious acts, but the Arkansas Immunity Statute does not apply to claims for intentional tortious acts. *Benton Sch. Dist. v. Greer*, 677 S.W.3d 799, 802 (Ark. 2023); *City of Fayetteville v. Romine*, 284 S.W.3d 10, 13 (Ark. 2008). The Arkansas Immunity Statute also does not affect 42 U.S.C. § 1983 claims. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law" (internal citations omitted); *Benton Sch. Dist.*, 677 S.W.3d at 802.

In the Eighth Circuit, damages in § 1983 claims are barred for wrongful death actions. *Spainhour v. Jones*, Case No. 4:19-cv-00202-KGB, 2020 WL 1312453, at 5 (E.D. Ark. Mar. 18, 2020) (citing *Andrews v. Neer*, 253 F.3d 1052, 1064 (8th Cir. 2001)). The federal remedy "to be applied to § 1983 death cases should be a survival action, brought by the estate of the deceased victim . . . [D]amages recoverable under § 1983 should be limited only to damages recoverable by the decedent." *Id.*

Therefore, surviving family members may recover damages for: (1) harms against Brittain as a survival action under a § 1983 claim; (2) harms against Brittain as a survival action under state law claims not barred by the Arkansas Immunity Statute; or (3) their own harms suffered as a wrongful death action under state law claims not barred by the Arkansas Immunity Statute.

Smith admits that his loss of household/family services damages calculation and loss as a consequence of losing a loved one are losses incurred by Brittain's family members (Dkt. Nos. 44-1, at 9–10, 13–15; 44-2, at 55–56). However, contrary to Defendants' argument that any liability for damages suffered by Brittain's family members is barred by the Arkansas Immunity Statute or limitations on § 1983 damages, Plaintiffs here assert claims that are unaffected by those limitations. For example, Plaintiffs' claims that Defendants committed the intentional torts of assault and battery are unaffected by the Arkansas Immunity Statute and may be brought under the Arkansas Wrongful Death Statute (Dkt. No. 14, ¶¶ 122–38).

While Defendants' arguments may preclude liability against some defendants on some claims in this case, the Court declines to exclude Smith's testimony on the ground that all theories of damages incurred by Brittain's family members are barred by the Arkansas Immunity Statute or limitations to § 1983 damages. The Court declines to exclude Smith's proposed opinions and testimony on this basis in advance of trial.

**B. Qualification Of The Expert**

Defendants do not dispute Smith's qualifications as an expert in economics, and the Court is satisfied that Smith is qualified as an expert in economic analysis based upon his decades long career in economics, *curriculum vitae*, peer reviewed research, and education. Therefore, the Court declines to exclude Smith's proposed opinions and testimony on qualification grounds.

**C. Reliability Of Testimony And Methodology**

The Court now turns to the reliability and methodology of Smith's damages calculations. Having reviewed the parties' briefing and the record as a whole, the Court is satisfied as to the reliability and methodology to permit Smith's proposed opinions and testimony regarding the damages calculation as to the decedent's loss of life as an independent element of damages.

As to the loss of wages and employee benefits and the loss of household and family services, the Court is satisfied that Smith used sufficiently reliable principles and methods for such that his testimony is "reliable or trustworthy in an evidentiary sense." *Academy Bank*, 116 F.4th 790; *see* Fed. R. Evid. 702.

By relying on Defendants' expert Pearson, Defendants dispute many of Smith's methodologies, including the likely length of time Brittain would have worked (Dkt. No. 44-3, at 10), the likelihood of Brittain's educational achievement (*Id.*, at 11), Smith's discount rate (*Id.*, at 13), whether certain chores should be excluded from Payne's loss (*Id.*, at 14), the calculation of a surcharge on average wages (*Id.*, at 15–16), the lack of an offset for services provided to Brittain (*Id.*, at 16), and the number of hours that Brittain would have provided in services (*Id.*). Although Smith and Pearson may disagree about the likelihood of certain actions Brittain would have taken, or whether certain other factors should be considered, such disagreements do not render Smith's proposed opinions and testimony so unreliable as to merit exclusion. Smith's proposed opinions and testimony regarding loss of wages relies on data from the U.S. Census Bureau and U.S. Department of Labor, was based on Brittain's characteristics, and clearly states the assumptions that Smith made and how he made his calculations (Dkt. No. 44-1, at 3–5).

Similarly, Smith's proposed testimony regarding the loss of household and family services relies on the hourly value of various professionals who perform routine household management services, counseling, and accompaniment services, cites reputable sources, and explains how the

damages were calculated (*Id.*, at 5–11). Defendants certainly may challenge such calculations, but such challenges are best suited for the "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof [that] are the traditional and appropriate means' of addressing 'shaky but admissible evidence'" rather than exclusion. *In re Bair*, 9 F.4th at 778 (quoting *Daubert*, 509 U.S. at 596). The Court is satisfied that Smith's methodology and reliability as to these damages calculations are sufficiently supported so as to be admissible at this stage of the litigation.

As to damages for the loss as a consequence of losing a loved one (Dkt. No. 44-1, at 13–14), the Court also determines that Smith's proposed opinions and testimony are sufficiently supported so as to be admissible at this stage of the litigation. Smith cites to studies that discuss how to value the loss of a loved one by family members and states that "[i]t is standard forensic economic practice to conduct an information interview to obtain information to assist in estimating economic losses." (*Id.*, at 14). It appears from Smith's deposition that he reviewed an informal interview of Payne, conducted by another person (Dkt. No. 44-2, at 20–22). Further, in his calculation he discloses his use of a "benchmark of 35 percent for [Payne] and [Brittain's sisters] and 25 percent for [Brittain's] parents" to arrive at his opinion of the loss of as a result of the death of Brittain; that calculation is subject to challenge through cross examination (Dkt No. 44-1, at 14). For these reasons, the Court finds Smith's proposed opinions and testimony satisfy Rule 702's methodology and reliability requirements so as to be admissible at this stage.

**V. Conclusion**

For the foregoing reasons, the Court denies Defendants' motion (Dkt. No. 44). The Court will rule on contemporaneous objections to Smith's testimony at trial, if Smith presents

inadmissible or objectionable testimony. The parties may revisit these issues at the pretrial conference to be conducted in this matter.

It is so ordered this 30th day of September, 2026.

Kristine G. Baker
Chief United States District Judge