**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**REBECCA J. PAYNE, personally, and as the Personal Representative of the Estate of Noah Hunter Brittain, *et al.*** **PLAINTIFFS**

**v.** **Case No. 4:22-cv-00588-KGB**

**MICHAEL C. DAVIS, *et al.*** **DEFENDANTS**

# ORDER

Before the Court is defendants Nathan Rice and John W. Staley's (collectively "County Defendants") motion for clarification (Dkt. No. 84). Also before the Court is plaintiffs Rebecca J. Payne, personally and as the personal representative of the estate of Noah Hunter Brittain ("Payne"), Jordan L. King, and James L. Crowder's (collectively "Plaintiffs") motion for limited reconsideration of County liability (Dkt. No. 86). The Court held a telephone hearing on the motions (Dkt. Nos. 88; 89). In reaching its decisions, the Court has considered the arguments made by counsel for all parties, those in writing and those made orally. For the following reasons, the Court grants both motions and grants, in part, and denies, in part, Plaintiffs' oral motion for reconsideration of County Defendants' liability raised at the hearing on these motions.

Previously, the County Defendants and separate defendant Michael C. Davis filed motions for summary judgment (Dkt. Nos. 56; 57). The Court entered an Opinion and Order (Dkt. No. 81) ruling on the pending motions, denying Davis's motion (Dkt. No. 57) and granting the County Defendants' motion as to Plaintiffs' federal law claims and granting, in part, and denying, in part the County Defendants' motion as to certain of Plaintiffs' state law claims (Dkt. No. 56).

**I. Motion For Clarification**

County Defendants assert that, based on the Opinion and Order entered by the Court on September 30, 2026 (Dkt. No. 81), "there appear to be no remaining claims against Lonoke County or Sheriff John Staley. The only claim that appears to remain against Rice is the state law false imprisonment claim." (Dkt. No. 85, at 2). The Court grants County Defendants' motion for clarification and, with this Order, clarifies the Court's rulings on the parties' motions for summary judgment (Dkt. No. 84).

**II. Motion For Reconsideration**

Plaintiffs move pursuant to Federal Rule of Civil Procedure 54(b) for the Court to "vacate summary judgment and dismissal of [count five] and deny summary judgment on that claim as it relates to the Estate's preserved non-supervision of medication compliance theory." (Dkt. No. 86, at 1). At the hearing on these motions, Plaintiffs also orally moved for the Court to reconsider its ruling on count fourteen, Plaintiffs' claim against Sheriff Staley in his official capacity for direct and vicarious liability under Arkansas state law (Dkt. No. 14, ¶¶ 179–86). In ruling on this claim in its Opinion and Order, the Court stated: "Plaintiffs in their response to the motion for summary judgment concede that there is no viable vicarious liability claim against Lonoke County" (Dkt. No. 81, at 63 (citing Dkt. No. 71, at 9)). At the hearing, Plaintiffs asserted that the Court failed to rule on the direct liability claim asserted in count fourteen against Sheriff Staley in his official capacity.

**A. Legal Standard**

There has been no judgment in this case adjudicating all the claims and all the parties' rights and responsibilities. As a result, Federal Rule of Civil Procedure 54(b) permits the Court to amend the Court's partial summary judgment Order. *Julianello v. K-V Pharmaceuitcal Co.*, 791

F.3d 915, 923 n.3 (8th Cir. 2015) (citing *Auto Servs. Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008)).

"The standard to be applied in considering a motion to reconsider under Rule 54(b) is not clear, but it is typically held to be less exacting than would a motion under Federal Rule of Civil Procedure 59(e), which is in turn less exacting than the standards enunciated in Federal Rule of Civil Procedure 60(b)." *Roemen v. United States*, 343 F.R.D. 619, 623 (D.S.D. 2023) (quoting *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854 (S.D. Iowa 2008) (internal citations and quotations omitted)); *see also Planned Parenthood Minnesota, N.D. v. Daugaard*, 946 F. Supp. 2d 913, 925 (D.S.D. 2013). A court may reconsider an interlocutory order to "correct any clearly or manifestly erroneous findings of facts or conclusions of law." *Jones*, 551 F. Supp. 2d at 854 (internal quotations and citation omitted).

"Reconsideration may be granted if the earlier decision misunderstood a party, made a decision outside of the adversarial issues, or because of a 'controlling or significant change in law' since the issues were submitted to the court." *Westinghouse Elec. Co. v. U.S.*, Case No. 4:03-cv-861 CDP, 2009 WL 881605, at *4 (E.D. Mo. 2009); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990) (citation omitted) (stating that motions for reconsideration are appropriate when the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, has made an error not of reasoning but of apprehension, or if there was a controlling or significant change in the law of facts since the submission of the issue to the court); *Sharma v. Shipman*, Case No. 6:21-cv-3151, 2022 WL 2678517, at *1 (W.D. Mo. Jul. 11, 2022) (citing *Trickey v. Kaman Indus. Tech. Corp.*, 2011 WL 2118578, at *2 (E.D. Mo. 2011)); *Washam v. BNSF Ry. Co.*, Case No. 3:19-cv-00231, 2022 WL 989037, at *2–3 (E.D. Ark. Mar. 31, 2022); *Andersen v. Wells Fargo Fin. Inc.*, Case No. 4:11-cv-

00085, 2012 WL 12871957, at *1 (S.D. Iowa Mar. 29, 2012); *Merry Maids, L.P. v. WWJD Enterprises, Inc.*, Case No. 8:06-cv-0036, 2006 WL 2040245, at *1 (D. Neb. Jul. 20, 2006). A motion to reconsider under Rule 54(b), however, may not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion for which reconsideration was sought. *See Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir. 1987) (stating that Rule 54(b) motions cannot "be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the . . . motion . . . nor serve as the occasion to tender new legal theories for the first time.")).

**B. Analysis**

Here, Plaintiffs rely upon allegations in their operative amended complaint and record evidence submitted at the summary judgment briefing stage to support their motion for reconsideration. Plaintiffs are not raising legal arguments that were not raised or identifying facts or evidence that was not submitted initially at the summary judgment briefing stage.

**1. Count Five**

Specifically, in support of their motion, Plaintiffs contend that count five is asserted against Sheriff Staley in his official capacity (Dkt. No. 87, at 2). The Court agrees (*see* Dkt. No. 14, ¶ 10). In count five, separate plaintiffs Payne and King specifically bring claims against "Defendant STALEY/SHERIFF (Official Capacity)" under the "Fourth and Fourteenth Amendments—Monell Liability Pursuant to 42 U.S.C. § 1983" (*Id.*, at 15). The Court understands this to be a claim maintained by Payne and King against separate defendant Sheriff Staley in his official capacity

pursuant to 42 U.S.C. § 1983 asserting *Monell* liability for alleged violations of the Fourth and Fourteenth Amendments (*Id.*, at 15; *see also Id.*, ¶¶ 108–109).

In asserting this claim in their operative amended complaint, Plaintiffs incorporated paragraphs 1 through 72 (*Id.*, ¶ 107). In pertinent part, count five alleges:

> 110. During all relevant times, DAVIS was acting pursuant to the policies and procedures of STALEY/SHERIFF.
>
> 111. An unconstitutional government policy may be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business. *See Brewington v. Keener*, 902 F.3d 796 (8th Cir. 2018).
>
> 112. STALEY/SHERIFF is a policymaker for Lonoke County, Arkansas, and the Lonoke County Sheriff's Office.
>
> 113. As such, STALEY/SHERIFF'S decision not to supervise DAVIS' known mental health issue as discussed above was the policy of Lonoke County, Arkansas.
>
> 114. The identified policy of STALEY/SHERIFF and Lonoke County was the moving force that caused BRITTAIN'S constitutional injury.
>
> 115. As a direct and proximate result of the Defendant's conduct, Plaintiffs suffered embarrassment, humiliation, physical and psychological harm, pain and suffering, loss of enjoyment of life, loss of life, and/or death.
>
> 116. As a direct and proximate result of the Defendant's conduct, Plaintiffs have and will incur attorneys' fees and litigation costs

(*Id.*, ¶¶ 110–16).

Plaintiffs allege in their operative complaint that "[d]uring all relevant times, DAVIS was acting pursuant to the policies and procedures of STALEY/SHERIFF." (*Id.*, ¶ 63). Plaintiffs also specifically allege:

> 68. STALEY/SHERIFF'S policy provides, "*Every applicant for employment by the department must be examined for emotional stability and physical condition by an individual licensed and qualified to perform the examinations. The examiners shall make recommendation to the employing agency concerning the applicant's suitability for employment.*"

69. The stated purpose for the aforementioned policy: "*It is in keeping with the concept that in order to render proper service to the community, a law enforcement officer must be physically sound and free of any defect, which might adversely affect the performance of duty. The deputy's personal safety and the safety and lives of others will be endangered if these important physical qualifications are not met. Furthermore, the emotional stability to withstand the pressures of modern law enforcement work is an essential qualification for applicants for law enforcement service and although psychological test and interviews have recognized limitations, many personality defects can and are identified through screening by trained professionals*."

70. The aforementioned policy further provides: "*After employment, the department reserves the right to have any employee reexamined at any time to determine his/her fitness for duty*."

71. The aforementioned policy further provides: "*If a mental health examiner indicates the presence of a condition that could limit the deputy's mental ability to cope with the stress of law enforcement duties, he/she will not be eligible for certification as a law enforcement officer with this department*."

72. Pursuant to FED.R.CIV.P. 11(b)(3), the following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery:

a. STALEY/SHERIFF knew that DAVIS suffered from a mental illness.

b. STALEY/SHERIFF knew that pursuant to policy and state law, he was required to ensure that DAVIS was psychologically fit for duty.

c. STALEY/SHERIFF knew that DAVIS was considered overly eager during his field training.

d. STALEY/SHERIFF knew that DAVIS suffered from mental illness during his employment.

e. STALEY/SHERIFF knew that DAVIS was required to take prescribed medications for his mental illness.

f. STALEY/SHERIFF knew that if DAVIS failed to take his medication as prescribed, he would not be emotionally stable and would be a danger to the public.

g. STALEY/SHERIFF did not supervise DAVIS to ensure that he took his prescribed medication as required.

> h. STALEY/SHERIFF'S failure to supervise DAVIS' known mental health issue permitted DAVIS to patrol for approximately two weeks, including the date that DAVIS shot and killed BRITTAIN.
>
> i. DAVIS' failure to take his medication as prescribed directly caused his emotional instability that caused him to unlawfully shoot and kill BRITTAIN.
>
> j. STALEY/SHERIFF knew that his own failure to supervise DAVIS is what caused BRITTAIN'S injuries and death.
>
> k. To cover up his own culpability, STALEY/SHERIFF terminated DAVIS' employment without conducting a proper and complete internal affairs investigation.
>
> l. To cover up his own culpability, STALEY/SHERIFF did not terminate DAVIS' employment because he unlawfully shot and killed BRITTAIN.
>
> m. Instead, STALEY/SHERIFF terminated DAVIS' employment because DAVIS failed to turn on his body camera.
>
> n. Stated another way, STALEY/SHERIFF terminated DAVIS' employment because DAVIS failed to record the unlawful killing; not for engaging in the killing.

(*Id.*, ¶¶ 68–72 (emphasis in original)). In sum, the Court finds that Plaintiffs sufficiently and specifically pled this theory of recovery in their operative amended complaint (*see Id.*, ¶¶ 72(d) to (h)).

In their motion for reconsideration, Plaintiffs represent that the elements of this claim are:

> 1. Davis, acting under color of state law, violated Brittain's Fourth Amendment right against unreasonable deadly force;
>
> 2. The challenged supervisory decision was County policy adopted by an official with final policymaking authority over that subject;
>
> 3. The decision reflected deliberate indifference to a known or obvious risk of the particular constitutional injury that resulted; and
>
> 4. The policy was the moving force that caused the constitutional injury.

(Dkt. No. 87, at 2).

Plaintiffs rely solely upon record evidence presented at the time of the summary judgment briefing in support of their motion for reconsideration. Plaintiffs assert that, as to each element of this theory of count five that is the subject of Plaintiffs' motion for reconsideration, there is a triable issue such that this Court should reconsider granting summary judgment in favor of Sheriff Staley and County Defendants on count five.

In support, Plaintiffs maintain that the Court found a triable Fourth Amendment violation based on Davis's use of force against Brittain, thereby creating a triable issue as to the first element of this theory of count five (Dkt. No. 87, at 3). The Court agrees.

As to the second element, Plaintiffs identify a departmental medication policy and a procedure that Sheriff Staley maintained with respect to medication, specifically Policy 5-6 which required disclosure of prescribed medication the employee had been informed could impair performance, known side effects, and the prescribed period of use, with a supervisor's memorandum retained in a secured file (*Id.*, at 3 (citing Dkt. No. 60-2, at 7, § I.B.1–2)). Plaintiffs rely upon Sheriff Staley's affidavit to claim that Sheriff Staley is a County policymaker who managed patrol and implemented its supervisory policies (Dkt. No. 87, at 3 (citing Dkt. No. 60-2, at 1–2, ¶¶ 2–3)). Further, Plaintiffs rely upon Sheriff Staley's deposition testimony description of the County's medication-supervision method "as medication disclosure and psychological evaluation, followed by presumed continued use" (Dkt. No. 87, at 3 (citing Dkt. No. 68-1, Staley Dep. 52:15–53:13)).

A central contention in this theory of count five, which the Court did not appreciate until evaluating this motion for reconsideration, is that Sheriff Staley testified generally that the County had nothing in place to report continued medication use and had no policy requiring such reports (Dkt. No. 87, at 3 (citing Dkt. No. 68-1, Staley Dep., at 52:15–22, 62:5–12)). Accordingly,

Plaintiffs maintain, as to Davis, that there were no continuing medication checks while Davis remained assigned to armed patrol and no supervision after fitness for duty evaluations that followed mental health incidents (Dkt. No. 87, at 3–4 (citing Dkt. No. 68-1, at 54:7–10, 62:17–22)). According to Plaintiffs, these "admissions identify an institutional course of action: obtain disclosure and clearance, then hope for compliance and no recurrence of mental health issues." (Dkt. No. 87, at 4). Plaintiffs argue that the Court should have found the policy element sufficiently supported to survive summary judgment (*Id.*).

Plaintiffs contend that Staley explained the medication information enabled supervisors to check on deputies, recognize changes, and investigate possible medication problems (*Id.* (citing Dkt. No. 68-1, at 97:7–21)). According to Plaintiffs, the written requirements and that explanation shows the County understood the information's protective function. However, the County did not use that information to monitor medication compliance to achieve the purpose of the policy according to Plaintiffs. The Court agrees with Plaintiffs that the policy element is sufficiently supported by record evidence on this point when construed in the light most favorable to Plaintiffs to survive summary judgment.

As to the third element of count five, Plaintiffs argue that, even when faced with specific examples of dangerous mental health conditions occurring when Davis's medication was not taken as prescribed – both when overdosed and when not taken at all – Sheriff Staley continued to do nothing to supervise Davis's medication compliance. Plaintiffs assert that a reasonable finder of fact could determine that the County's notice concerned an admitted, specific danger demonstrated by Davis's actual mental health history (Dkt. No. 87, at 5). Plaintiffs argue that Sheriff Staley acknowledged that medication fluctuations could make Davis paranoid to the point of believing someone intended to harm him (*Id.*, at 5 (citing Dkt. No. 68-1, at 61:15–19)). Plaintiffs also rely

upon their claim that, nevertheless, non-supervision of medication compliance continued throughout Davis's patrol service and, specifically, after Davis's last mental health crisis and fitness for duty evaluation (Dkt. No. 87, at 5 (citing Dkt. No. 68-1, at 54:7–10, 62:17–22)). Plaintiffs contend that "this particular detailed knowledge, coupled with Davis's repeated serious mental health episodes, made the constitutional inadequacy of non-supervision of medication compliance obvious to every reasonable policymaker, even after unrestricted clearance." (Dkt. No. 87, at 5).

Plaintiffs also assert that, whether the continuing omission was deliberately indifferent requires consideration of the sequence of events, including but not limited to Davis's initial screening in 2013, the incident in 2014-2015, counseling and Davis's decision to stop drinking, and Davis's renewed paranoia in approximately 2016-2017 resulting in hospitalization (*Id.*, at 5–6). Further, Plaintiffs point to Staley's admission that the County knew medication fluctuations could make Davis paranoid to the point of Davis's believing someone or something intended to harm him (*Id.* at 6 (citing Dkt. No. 68-1, at 61:15–19)). Davis also acknowledged that supervisors and coworkers noticed behavioral differences when Davis was unmedicated and told him to take his medicine and calm down (Dkt. No. 87, at 6 (citing Dkt. No. 58-1, Davis Dep. 37:13–38:4)). Nevertheless, Plaintiffs maintain that medication checks were absent throughout Davis's patrol service (Dkt. No. 87, at 6 (citing Dkt. No. 68-1, at 54:7–10)).

Plaintiffs assert that, based on record evidence, the County could require reevaluation for fitness for duty at any time (Dkt. No. 87, at 6–7 (citing Dkt. Nos. 60-2, at 31, Policy 11-1, § I.A; 68-1, at 94:6–12)). Plaintiffs' expert Taylor identified the absence of long-term monitoring, follow-up evaluations, and supervisory controls after clearance as a departure from professional

standards governing a potentially impaired officer's assignment to armed patrol (Dkt. No. 87, at 6–7 (citing Dkt. No. 68-2, at 12, ¶ 57)).

Plaintiffs argue that, although similar prior constitutional violations ordinarily establish notice, the analysis in *Doe v. Fort Zumwalt R-II School District* permits liability where the need for supervision and likely constitutional consequence are obvious. 920 F.3d 1184, 1189 (8th Cir. 2019). Given the County's admitted knowledge of Davis's particular risk, Plaintiffs assert that a reasonable fact finder could find that repeatedly returning to non-supervision of medication compliance with Davis's specific mental health history made unjustified deadly force predictable. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 409–10 (1997). Plaintiffs contend that the Court should have found that genuine issues of material fact in dispute precluded the Court from granting summary judgment on Plaintiffs' count five deliberate indifference claim (Dkt. No. 87, at 7). On reconsideration, now appreciating the precise argument made by Plaintiffs on medication compliance, the Court agrees. The third element of this claim is sufficiently supported by record evidence on this point when construed in the light most favorable to Plaintiffs to survive summary judgment.

As to the fourth element, in their motion for reconsideration, Plaintiffs acknowledge that they must establish a direct causal link between the policy and the constitutional injury, *Brown*, 520 U.S. at 404, and that the question is whether correcting the supervisory deficiency would have prevented the injury, *City of Canton v. Harris*, 489 U.S. 378, 391–92 (1989) (Dkt. No. 87, at 7). In its Opinion and Order, the Court compared the earlier overdose with the later nonuse of medication and emphasized the absence of a medical expert and Sheriff Staley's precautions (Dkt. No. 81, at 59–61). However, Plaintiffs argue in support of their motion for reconsideration that the Court's reasoning does not resolve whether supervision of medication compliance at least after

Davis's last fitness for duty evaluation would have revealed the noncompliance, triggered protective removal, and kept Davis off armed patrol during the fatal encounter (Dkt. No. 87, at 7). Plaintiffs argue the evidence supports that causal inference (*Id.*).

Davis's prescription medication called for daily use, but he admitted that he did not take it as prescribed (*Id.*, at 8). Davis acknowledged that starting and stopping was not how his medication was prescribed (*Id.* (citing Dkt. Nos. 58-1, Davis Dep. 36:1–19, 37:1–6; 81, at 55)). Davis denied being told that the County needed to monitor use, and Davis believed starting, stopping, or losing medication did not require reporting to the County (Dkt. No. 87, at 8 (citing Dkt. No. 58-1, Davis Dep. 37:10–13, 68:2–14)). There is undisputed record evidence that, before the shooting, Davis lost his medication, went eight or nine days without it, and sought no early refill (Dkt. No. 87, at 8 (citing Dkt. No. 58-1, Davis Dep. 64:17–65:8, 65:17–20)).

Plaintiffs argue that this eight-to-nine-day lapse followed years without medication compliance supervision. Further, Plaintiffs assert that medication-focused supervisory contact over the years would have addressed what Davis was prescribed and whether Davis took his medication as prescribed. His intermittent use and understanding were existing, discoverable facts according to Plaintiffs (Dkt. No. 87, at 8). Further, Plaintiffs cite to record evidence that supervisors already noticed differences when Davis was unmedicated (Dkt. No. 87, at 8 (citing Dkt. No. 58-1, Davis Dep. at 37:13–38:4)).

For these reasons, Plaintiffs argue that a jury could find that medication compliance supervision would have exposed noncompliance, prompted review of its significance to fitness for duty for armed patrol, and also informed Davis of the importance of reporting medication non-compliance to his supervisor in the event it was not already discovered during proper supervision. Plaintiffs claim that Davis's prior self-report reached supervisors and caused intervention,

demonstrating that reporting could produce action (Dkt. No. 87, at 8 (citing Dkt. No. 68-1, at 33:7–19)). According to Plaintiffs, that evidence supports a finding that supervision of medication compliance would have revealed the sustained interruption of medication before the shooting giving rise to this case. Further, Plaintiffs point to record evidence that the County knew medication fluctuations could make Davis believe someone intended harm (Dkt. No. 87, at 8 (citing Dkt. No. 68-1, at 61:15-19)).

Plaintiffs assert that Lonoke County's standing procedure since 2013 was administrative leave whenever fitness was questioned "for any reason," until a physician cleared the officer to return (Dkt. No. 87, at 8 (citing Dkt. No. 60-2, ¶ 12, at 3–4)). Sheriff Staley confirmed that he took Davis off the street because fitness was questionable and kept him off until evaluation and confirmation, to protect the public (Dkt. No. 87, at 8–9 (citing Dkt. No. 68-1, at 60:4–18)). The Court acknowledged this in its Opinion and Order (Dkt. No. 81, at 60). However, the Court did not fully appreciate Plaintiffs' argument that a question about fitness, rather than proven unfitness, triggered protective removal and that the medication policy also authorized temporary reassignment, according to Plaintiffs (Dkt. No. 87, at 9 (citing Dkt. No. 60-2, at 7, § I.B.3)). According to Plaintiffs, a jury could reasonably find that discovering sustained medication noncompliance in Davis, with his known mental health history and risk, would have raised a new fitness question, triggered removal under the County's existing procedure, and kept Davis off armed patrol pending renewed clearance during the fatal encounter, such that Davis would not have been on patrol unless or until Davis was taking medication as prescribed (Dkt. No. 87, at 9).

In its Opinion and Order, the Court distinguished overdose from non-use and emphasized the absence of a medical expert as reasons to grant summary judgment to County Defendants on this claim (*see* Dkt. No. 81, at 60). The Court now acknowledges that such a distinction does not

resolve whether medication compliance supervision would reveal a fitness for duty concern and prompt protective removal. According to Plaintiffs, Sheriff Staley's admissions establish the County's knowledge and its requirement of leave whenever fitness was questioned, without first proving unfitness (Dkt. No. 87, at 8–9 (citing Dkt. Nos. 60-2, ¶ 12, at 3-4; 68-1, at 60:4–18, 61:15–19)). In support of their motion for reconsideration, Plaintiffs argue that a medical expert is not necessary to prove that procedure.

Further, Plaintiffs assert that, while Davis denied paranoia from nonuse and claimed that he understood his doctor permitted intermittent use, he also admitted that use was inconsistent with the prescription (Dkt. No. 87, at 10 (citing Dkt. No. 58-1, Davis Dep. 36:5–19, 57:7–24)). Plaintiffs argue that those statements must be considered alongside the daily prescription evidence, observed differences when unmedicated, and Staley's admitted knowledge of fluctuation related paranoia (Dkt. No. 87, at 10 (citing Dkt. Nos. 81, at 55; 58-1, Davis Dep. 37:13–38:4; 68-1, at 61:15–19)). In support of their motion for reconsideration, Plaintiffs maintain that from this affirmative evidence a jury could reasonably find causation by a preponderance of the evidence and that the Court should have found causation genuinely disputed. Having fully appreciated Plaintiffs' argument on this claim in the light of Plaintiffs' motion for reconsideration, the Court agrees with Plaintiffs that the fourth element is sufficiently supported by record evidence on this point when construed in the light most favorable to Plaintiffs to survive summary judgment.

Plaintiffs also argue that the injury sustained here bears a particular relationship to the known danger: after prolonged nonuse, Davis shot an unarmed person and testified that Davis believed that person would produce a rifle and kill him (Dkt. No. 87, at 9 (citing Dkt. No. 58-1, Davis Dep. 64:17–65:8, 93:14–21, 103:13–104:25)). Plaintiffs argue that the jury could find that the shooting manifested the threat-misperception risk the County recognized. Plaintiffs also argue

that Taylor's opinion that Staley's inaction and knowledge of Davis's mental-health issues contributed to the shooting provides additional support to deny summary judgment (Dkt. No. 87, at 9 (citing Dkt. No. 68-2, at 12–13, ¶¶ 57, 59)).

For these reasons, the Court reconsiders its prior Opinion and Order as to count five and, consistent with this Order, vacates its prior Opinion and Order as to count five and denies County Defendants' motion for summary judgment as to count five. Payne and King may proceed with this claim.

**2. Count Fourteen**

In count fourteen, Plaintiffs sue Sheriff Staley in his official capacity for direct and vicarious liability under Arkansas state law (Dkt. No. 14, ¶¶ 179–86). Plaintiffs in their response to the motion for summary judgment conceded that there is no viable vicarious liability claim against Lonoke County (Dkt. No. 71, at 9 ("Plaintiffs will concede that there is no viable vicarious liability claim against the County.").

To the extent Plaintiffs, at the hearing on these motions, asserted that this admission was intended to be made as to Arkansas state law claims based only on alleged negligent, not intentional, conduct, the Court does not grant reconsideration on this basis due to the statement Plaintiffs made in their response. That statement does not condition the concession on alleged negligent, but not intentional, conduct (*Id.*). For this reason, to the extent Plaintiffs move the Court to reconsider their claims against Sheriff Staley in his official capacity for vicarious liability under Arkansas state law, the Court denies Plaintiffs' motion for reconsideration.

Based on arguments made at the hearing on these pending motions, the Court also understands Plaintiffs to move for reconsideration on count fourteen because Plaintiffs in their response did not concede liability for direct claims brought against Sheriff Staley in his official

capacity under Arkansas law. The Court agrees that the Court did not fully appreciate the concession made by Plaintiffs and, therefore, grants Plaintiffs' motion to reconsider the Court's prior Opinion and Order as to count fourteen on this basis – direct liability only, as distinguished from vicarious liability.

For the same reasons the Court denies County Defendants' motion for summary judgment as to count five, the Court denies County Defendants' motion for summary judgment as to Plaintiffs' claim against Sheriff Staley in his official capacity for direct liability under Arkansas state law. The Court understands Plaintiffs to rely upon the same theory of failure to supervise Davis's medication as giving rise to a claim against Sheriff Staley in his official capacity for direct liability under Arkansas state law. The deliberate indifference standard that applies to count five equates to a standard of fault akin to intentional conduct. Deliberate indifference is a lesser degree of culpable intent than bad faith or gross misjudgment, but it is still a "stringent standard of fault . . . ." *Brown,* 520 U.S. at 410. "A showing of simple or even heightened negligence will not suffice" to establish deliberate indifference. *Id.* at 407. Rather, a defendant is deliberately indifferent only if he acts with "conscious disregard" for a plaintiff's rights. *Id.* Such conscious disregard exists only if either: (1) the defendant actually knows that its actions will violate the plaintiff's rights or (2) such a violation is the "plainly obvious consequence" of the defendant's actions. *Id.* at 410; *see also Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 291 (1998) (citing *Brown*).

## III. Conclusion

For these reasons, the Court grants County Defendants' motion for clarification and considers this Order sufficient to clarify the Court's rulings (Dkt. No. 84). The Court also grants Plaintiffs' motion for limited reconsideration of County Defendants' liability (Dkt. No. 86). The

Court grants, in part, and denies, in part, Plaintiffs' oral motion for reconsideration of County Defendants' liability raised at the hearing on these motions.

Consistent with this Order, the Court vacates its Opinion and Order as to count five and denies County Defendants' motion for summary judgment as to count five. Payne and King may proceed with their claim against separate defendant Sheriff Staley in his official capacity pursuant to 42 U.S.C. § 1983 asserting *Monell* liability for alleged violations of the Fourth and Fourteenth Amendments in count five. Consistent with this Order, the Court vacates, in part, its Opinion and Order as to count fourteen and denies County Defendants' motion for summary judgment as to Plaintiffs' claims against Sheriff Staley in his official capacity for direct liability under Arkansas state law as asserted in count fourteen.

To the extent necessary, the Court vacates its Opinion and Order as to Plaintiffs' survival and wrongful death claims asserted in counts twelve and thirteen (Dkt. No. 81, at 67), and the Court modifies its rulings on those claims consistent with the terms of this Order.

It is so ordered this 26th day of October, 2026.

Kristine G. Baker

Kristine G. Baker
Chief United States District Judge